667 So.2d 226 (1995)
FLORIDA DEPARTMENT OF REVENUE and J. Thomas Herndon, Executive Director of the Department of Revenue, State of Florida, Appellants,
v.
SHARE INTERNATIONAL, INC., Appellee.
No. 93-4093.
District Court of Appeal of Florida, First District.
August 21, 1995.
*227 Robert A. Butterworth, Attorney General, and Lealand L. McCharen, and Eric J. Taylor, Assistant Attorneys General, Tallahassee, for appellants.
Lisa R. Daugherty of Law Offices of Davis, Scott, Weber & Edwards, Miami, for appellee.
BARFIELD, Judge.
The Department of Revenue appeals a trial court order in which the trial judge declared the Department's assessment of sales/use taxes against Share International, Inc. [Share] to be unconstitutional. We affirm.
Share is a Texas corporation which engages in the business of manufacturing and distributing chiropractic supplies. Share sells its products primarily through direct mail solicitation out of its principal offices in Fort Worth, Texas. Dr. James Parker is the president, director, sole employee and sole shareholder of the company. Dr. Karl Parker is a director and vice-president of the company.
For three days in November in the years 1986, 1987, 1988, 1989, and 1991, James and Karl Parker were present at seminars or conventions held in Florida, acting in the capacity of speakers and coordinators. The seminars are conducted by the Parker Chiropractic Resource Foundation [Foundation], also a Texas corporation, which is in the business of providing educational information and support for chiropractors. The Foundation, owned by James and Karl Parker, has no offices, employees, or agents in any state other than Texas.
During the Florida seminars, Share's products were displayed in an adjacent room and were available for sale. Share registered with the Department and collected and remitted to the Department sales tax on items sold in Florida during the seminars. Share did not, however, collect Florida sales taxes on sales or orders made by telephone or mail from residents in Florida but delivered by mail or common carrier or on orders received during the Florida seminars but delivered by mail or common carrier at a later date. Share generated approximately three million dollars in annual gross revenue during the years at issue, with the vast majority earned from mail order sales. Approximately 4.6% of the annual sales resulted from products sold directly to chiropractors at seminars held in Florida.
In November of 1990, the Department conducted an audit of Share's records for the period December 1, 1985 through November 30, 1990. The Department discovered that Share had not collected and remitted to the Department tax on orders taken in Florida *228 and on mail order sales to Florida residents. The Department decided that Share had "substantial nexus" with Florida based on presence in the state during the seminars and the sale of products during these periods of time. The Department issued a final assessment in the amount of $77,933.98, determining that Share had the duty to collect Florida tax on all sales to Florida residents pursuant to section 212.0596, Florida Statutes.
Share timely filed a protest to the assessment. The Department issued a Notice of Decision upholding the assessment. Share then timely filed a complaint in circuit court challenging the assessment. The trial judge concluded that Share had not created a substantial nexus with Florida so as to provide the state with authority, consistent with the Commerce Clause, to require Share to collect and pay taxes on the mail order sales it makes to Florida residents and declared the assessment unconstitutional.
The Department argues that Share purposefully availed itself of Florida's economic market, that Share's contacts were not casual or random, and that Share came to Florida for sales and showed a continuing pattern of physical presence in the state by soliciting products and soliciting business in Florida at each of the seminars. The Department contends that the trial judge misinterpreted Supreme Court decisions construing the Commerce Clause. The Department notes that the Supreme Court has never required permanent physical presence in order to establish a substantial nexus with a state which would allow the state to require collection and remittance of tax on sales to residents and asserts that what is required is that a vendor have employees or agents in a state, have its products in a state, or make sales in a state and that the physical presence be coupled with the intent to have the opportunity for financial gain for the vendor in the taxing state.
In National Bellas Hess, Inc. v. Illinois Department of Revenue, 386 U.S. 753, 87 S.Ct. 1389, 18 L.Ed.2d 505 (1967), Bellas Hess was a mail order house with its principal place of business in North Kansas City, Missouri. The company had neither outlets nor sales representatives in Illinois. The Illinois Department of Revenue sought to require the company to collect and pay Illinois use taxes. All of the contacts which the company had with Illinois were via mail or common carrier. Twice a year catalogues were mailed to active or recent customers throughout the nation. The catalog mailings were supplemented by advertising flyers which were occasionally mailed to past or potential customers. Orders were mailed by customers and accepted in Missouri.
The Supreme Court determined that Illinois could not impose the burden of collecting the state's use tax on Bellas Hess. It was noted that the power of a state to impose collection responsibility had been upheld in cases when sales were arranged by local agents in the taxing state and when the mail order seller maintained local retail outlets, but "the Court has never held that a State may impose the duty of use tax collection and payment upon a seller whose only connection with customers in the State is by common carrier or the United States mail." 386 U.S. at 758, 87 S.Ct. at 1392.
In National Geographic Society v. California Board of Equalization, 430 U.S. 551, 97 S.Ct. 1386, 51 L.Ed.2d 631 (1977), National Geographic Society, a nonprofit educational and scientific corporation of the District of Columbia, maintained two offices in California that solicited advertising copy for the Society's monthly magazine. These two offices performed no activities related to the Society's operation of mail-order business for the sale from the District of Columbia of maps, globes, books, etc. Orders for these items were mailed directly to the District of Columbia headquarters on coupons or forms enclosed with announcements mailed to Society members and magazine subscribers. Payment for items ordered was mailed with the order or the customer was billed after receipt of the merchandise. The issue presented was whether the Society's activities at the offices in California provided sufficient nexus between the Society and the state, as required by the Commerce Clause, to support the imposition upon the Society of a use-tax collection liability on sales of merchandise to California residents.
*229 The California Supreme Court concluded that the "slightest presence" of the seller in California established sufficient nexus between the state and the seller constitutionally to support imposition of the duty to collect and pay the tax. National Geographic Society v. Board of Equalization, 16 Cal.3d 637, 128 Cal. Rptr. 682, 547 P.2d 458 (1976). The Supreme Court determined that the Society's continuous presence in the state, comprised of the maintenance of two offices in the state and solicitation by employees assigned to those offices of advertising copy in the range of $1 million annually, established a much more substantial presence than the expression "slightest presence" connoted and that such presence rendered constitutional the obligations imposed upon the Society to collect and remit the tax. The Supreme Court stated that affirmance was not to be understood as implying agreement with the California Supreme Court's "slightest presence" standard of constitutional nexus.[1]
In Quill Corporation v. North Dakota, 504 U.S. 298, 112 S.Ct. 1904, 119 L.Ed.2d 91 (1992), the Supreme Court was again faced with the issue of whether a state could require an out-of-state mail-order house that had neither outlets nor sales representatives in the state to collect and pay a use tax on goods purchased for use within the state. Quill is a Delaware corporation which sells office equipment and supplies. None of its employees work or reside in North Dakota. Quill solicits business through catalogs and flyers, advertisements in national periodicals, and telephone calls. Merchandise sold to North Dakota customers is delivered by mail or common carrier from out-of-state locations. The state supreme court declined to follow Bellas Hess after concluding that "the tremendous social, economic, commercial, and legal innovations" of the past quartercentury had rendered its holding obsolete. State By and Through Heitkamp v. Quill, 470 N.W.2d 203, 208 (N.D. 1991).
In reversing the state court, the Supreme Court noted that under the four-part test set forth in Complete Auto Transit, Inc. v. Brady, 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977), a tax would be sustained against a Commerce Clause challenge so long as the
"tax (1) is applied to an activity with a substantial nexus with the taxing State, (2) is fairly apportioned, (3) does not discriminate against interstate commerce, and (4) is fairly related to the services provided by the State." 430 U.S., at 279, 97 S.Ct., at 1079. Bellas Hess concerns the first of these tests and stands for the proposition that a vendor whose only contacts with the taxing State are by mail or common carrier lacks the "substantial nexus" required by the Commerce Clause.
504 U.S. at 311, 112 S.Ct. at 1912. The Court rejected the notion that evolution of its cases indicated that the Commerce Clause ruling of Bellas Hess was no longer good law. The Court stated the bright-line rule of Bellas Hess furthers the ends of the dormant Commerce Clause by creating a safe harbor for vendors whose only connection with customers in the taxing state is by common carrier or mail. It was noted that the rule, like other bright-line tests, appears artificial at its edges: "whether or not a State may compel a vendor to collect a sales or use tax may turn on the presence in the taxing State of a small sales force, plant, or office." 504 U.S. at 315, 112 S.Ct. at 1914. The majority felt, however, that the artificiality was more than offset by the benefits of a clear rule which encouraged settled expectations.
*230 It appears clear from Supreme Court decisions that an out-of-state seller whose only connection with customers in the taxing state is by common carrier or mail cannot be required to collect and remit tax on sales to residents of the taxing state, and that out-of-state sellers who maintain a continuing presence in the state by one or more full-time or part-time employees can be required to collect and remit such a tax. The case before us does not present either factual situation.
The trial judge found that the chiropractors in attendance at the Florida seminars were from various states throughout the country, and had pre-registered based on information previously received. Internal marketing studies conducted by Share indicated that normally only 16% of the attendees at its Florida seminar were residents of Florida, and the remaining 84% came from outside the state. The seminars were specifically held in Florida during the winter months for the purpose of targeting chiropractors who practice in the northeastern United States and Canada. Many of the chiropractors present at the seminars were long-standing customers of Share, and had been purchasing products from Share for years through the catalogue. The trial judge determined that Share did not create a customer base in Florida during its presence at the seminars and did not exploit the consumer market in Florida.
The Department correctly notes that the Supreme Court has never required permanent presence in the state to establish "substantial nexus" for purposes of the Commerce Clause. We reject, however, the Department's argument that once an out-of-state vendor crosses the "bright-line" established in Bellas Hess by doing anything more than communicate with its customers by mail or common carrier that it will be liable to the taxing state to collect its sales or use taxes. If the "bright-line" is crossed and the out-of-state vendor no longer falls within the safe harbor, it must then be determined whether the vendor's activities within the state establish a substantial nexus with the taxing state such that imposing the duty to collect and remit tax on sales to residents of the taxing state does not violate the Commerce Clause.
We conclude that the presence in the state for approximately three days each year of Share employees and products, under the circumstances presented in this case, does not establish a substantial nexus which will permit the state to impose on Share the duty to collect and remit taxes on mail-order sales to Florida residents. Accordingly, the order on appeal is affirmed. Because we feel this case presents an issue of great public importance, we certify the following question to the Florida Supreme Court:
Whether, under the facts of this case, "substantial nexus" within the meaning set forth by the United States Supreme Court in Quill Corporation v. North Dakota, 504 U.S. 298, 112 S.Ct. 1904, 119 L.Ed.2d 91 (1992), and National Bellas Hess, Inc. v. Department of Revenue of Illinois, 386 U.S. 753, 87 S.Ct. 1389, 18 L.Ed.2d 505 (1967), exists which would permit Florida to require Share to collect sales and use taxes on all goods sold to Florida residents?
KAHN, J., and SHIVERS, Senior Judge, concur.
NOTES
[1] The Supreme Court noted that in prior decisions the requisite nexus was held to be shown in cases where the out-of-state sales were arranged by the seller's local agents working in the state, in cases of maintenance in the state of local retail store outlets by out-of-state mail-order sellers, and in the case of an out-of-state company that had 10 salesmen conducting continuous local solicitation. See Felt & Tarrant Co. v. Gallagher, 306 U.S. 62, 59 S.Ct. 376, 83 L.Ed. 488 (1939); Nelson v. Sears, Roebuck & Co., 312 U.S. 359, 61 S.Ct. 586, 85 L.Ed. 888 (1941); Scripto, Inc. v. Carson, 362 U.S. 207, 80 S.Ct. 619, 4 L.Ed.2d 660 (1960). Maintenance in the taxing state of a single employee, an engineer whose office was in his home and whose primary responsibility was to consult with a customer regarding its anticipated needs for the out-of-state supplier's product, established a sufficient relation to activities within the state to support imposition of a gross receipts tax. Standard Pressed Steel Co. v. Washington Rev. Dept., 419 U.S. 560, 95 S.Ct. 706, 42 L.Ed.2d 719 (1975).