# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-04-00503-CV

### INOVA Diagnostics, Inc., Appellant

### v.

### Carole Keeton Strayhorn, Comptroller of Public Accounts of the State of Texas and Greg Abbott, Attorney General of the State of Texas, Appellees

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT NO. GN302862, HONORABLE DARLENE BYRNE, JUDGE PRESIDING

## O P I N I O N

When INOVA, a California corporation, hired a salesperson in this state, the Texas Comptroller informed the company that it was required to pay the state franchise tax. INOVA paid the taxes under protest and filed suit in the district court for a refund. The trial court ruled in favor of the Comptroller.

INOVA argues that Public Law 86-272 (15 U.S.C. §§ 381-84 (West 1997)) exempts INOVA from paying any portion of the franchise tax measured by earned surplus and that the portion of the franchise tax imposed on capital cannot be separated from the portion imposed on earned surplus. Even if the franchise tax contains two distinct components, INOVA insists that net taxable capital is measured in part by surplus earnings and it is thus exempt. In the alternative, INOVA contends it lacks a substantial nexus with this state to be subject to the franchise tax under the

Commerce Clause. We reject all of INOVA's challenges and affirm the district court's judgment denying the refund.

## BACKGROUND

INOVA is a California corporation based in San Diego. It develops and manufactures products used in medical testing. INOVA has only one employee in Texas, who was hired in 1996. That employee is a salesperson who works an average of seven to ten days per month in Texas. His activities in Texas are limited to visiting existing and prospective customers, providing promotional materials, and demonstrating INOVA products. All orders are placed directly with INOVA in California and delivered via mail or common carrier.

In 1998, INOVA completed a business tax questionnaire at the Comptroller's request. Based on the questionnaire, the Comptroller informed INOVA that it was required to pay the Texas franchise tax for the years following INOVA's employment of a salesperson in Texas. INOVA initially refused to pay the tax but ultimately paid the taxes under protest when the Comptroller notified INOVA that it had forfeited its corporate privileges in Texas. INOVA submitted claims for refunds of franchise taxes paid for the years 1999 through 2003. The Comptroller denied these claims and INOVA filed suit in the district court. After a bench trial, the district court entered judgment in favor of the Comptroller. This appeal followed.

## STATUTORY AND ADMINISTRATIVE PROVISIONS

Our resolution of INOVA's issues involves the interaction of the Texas franchise tax, Public Law 86-272, and the Comptroller's rules for assessing the franchise tax. Accordingly, it is useful to briefly review the relevant statutes and rules before discussing INOVA's issues.

2

**The franchise tax**

Texas imposes a tax on corporations for the privilege of doing business in the state. *See* Tex. Tax Code Ann. § 171.001(a) (West Supp. 2004-05); *Anderson-Clayton Bros. Funeral Home, Inc. v. Strayhorn*, 149 S.W.3d 166, 169 (Tex. App.—Austin 2004, pet. filed); *Rylander v. Fisher Controls Int'l, Inc.*, 45 S.W.3d 291, 293 (Tex. App.—Austin 2001, no pet.). The tax is imposed annually on "each corporation that does business in the state or is chartered in the state." Tex. Tax Code Ann. § 171.001(a). Before 1991, the franchise tax had been assessed solely on a corporation's taxable capital. *See General Dynamics Corp. v. Sharp*, 919 S.W.2d 861, 863-64 (Tex. App.—Austin 1996, writ denied) (discussing history of franchise tax). The tax code was amended in 1991 to add taxation of a corporation's taxable earned surplus or its taxable capital, whichever is higher under the statutory formula. *See* Act of Aug. 12, 1991, 72d Leg., 1st C.S., ch. 5, § 8.02, 1991 Tex. Gen. Laws 134, 152.[1] This amendment corrected an inequity of the prior law in which capital-intensive industries bore the brunt of the tax, while less capital-intensive service industries did not pay as much even when they generated large profits. *See Anderson-Clayton Bros. Funeral Home*, 149 S.W.3d at 169; *General Dynamics Corp.*, 919 S.W.2d at 863. The tax on capital is set at the lower rate of .25 percent of a corporation's net capital, while franchise tax on earnings is set at 4.5 percent of net earned surplus.

---

[1] A corporation's taxable capital or taxable earned surplus is apportioned to the state by dividing the corporation's gross receipts generated in Texas by the corporation's total world-wide gross receipts. *See* Tex. Tax Code Ann. § 171.106 (West Supp. 2004-05); *General Dynamics*, 919 S.W.2d at 863. This percentage is then multiplied by the total tax base to calculate the amount of tax base apportionable to Texas. *General Dynamics*, 919 S.W.2d at 863; *see* Tex. Tax Code Ann. § 171.106.

**Public Law 86-272**

Congress enacted Public Law 86-272 in 1959 in response to a United States Supreme Court decision that indicated that the federal constitution does not prohibit individual states from imposing an income tax on out-of-state corporations, even when their only business activity in the state is solicitation of purchases. *See Wisconsin Dep't of Revenue v. William Wrigley, Jr. Co.*, 505 U.S. 214, 220-21 (1992) (discussing opinion in *Northwestern States Portland Cement Co. v. Minnesota*, 358 U.S. 450, 452 (1959)). Less than a year after the *Northwestern States Portland Cement* opinion, Public Law 86-272 was passed to create minimum standards for business activity required within a state before that state may impose state income tax on an out-of-state corporation. *See William Wrigley, Jr. Co.*, 505 U.S. at 223. Specifically, the statute prohibits a state from imposing a net income tax if the foreign taxpayer's only business activity in the state is the solicitation of orders. *See* 15 U.S.C. § 381(a). The statute defines net income tax as "any tax imposed on, or measured by, net income." *Id*. § 383.

**Administrative rules**

The Comptroller agrees that it may not impose the net earned surplus component of the franchise tax on an out-of-state corporation whose only activity in the state is solicitation of orders. *See* 34 Tex. Admin. Code §§ 3.546, 3.554 (2005). However, for more than ten years, the Comptroller has held that Public Law 86-272 does not exempt an out-of-state corporation from the payment of franchise tax based on its net taxable capital. *See id*. § 3.546 (adopted 1992); *id*. § 3.554 (adopted 1994). Section 3.546 of the rules explains that "a corporation may be subject to the taxable

4

capital component [of the franchise tax], but not subject to the earned surplus component, because of Public Law 86-272." 34 Tex. Admin. Code § 3.546(b). Section 3.554 provides that:

> If the only business activity within this state is the solicitation of orders for sales of tangible personal property . . . then the corporation is not subject to the earned surplus component of the franchise tax, even if the corporation has obtained a certificate of authority. Only the sale of tangible personal property is afforded immunity under Public Law 86-272; therefore, the leasing, renting, licensing, or other disposition of tangible personal property, intangibles, or any other type of property is not immune from taxation by reason of Public Law 86-272. This subsection does not apply to a corporation chartered in Texas.

*Id*. § 3.554(b). Section 3.554 also contains detailed provisions defining solicitation and discussing what business activities will subject a corporation to the earned surplus component of the franchise tax. *See id*. § 3.554(c), (d), (e), and (f).

## DISCUSSION

The parties do not dispute the underlying facts of the case; they agree that INOVA only engages in the solicitation of orders in Texas for the purposes of Public Law 86-272. The resolution of this case turns on questions of law that we review *de novo*. *See Tex. Dep't of Transp. v. Needham*, 82 S.W.3d 314, 318 (Tex. 2002). INOVA raises two issues contending that Public Law 86-272 prevents the Comptroller from imposing the taxable capital component of the state franchise tax. First, it contends that the franchise tax is a single integrated tax and may not be separated into components for the purpose of avoiding the application of Public Law 86-272. Second, INOVA contends that even if the taxable capital component stands alone, INOVA is exempted from that

5

portion of the franchise tax as well because the capital component is imposed on, or measured by, net income. Finally, INOVA contends that it lacks a substantial nexus with Texas under the Commerce Clause to permit state taxation.

**May the Comptroller impose franchise tax on net capital alone?**

Although the practical effect of the present franchise tax is to assess the greater of a 4.5 percent tax on net taxable earned surplus or a .25 percent tax on net taxable capital, the legislature chose to express this tax in a more complicated formula. *See* Tex. Tax Code Ann. § 171.002(b). The tax is calculated by adding the tax on net taxable capital and the difference between the tax on net taxable earned surplus and the tax on net taxable capital. *See id.*[2] INOVA contends in its first issue that the Comptroller may not ignore that formula and assess only the capital taxable component of the tax in order to avoid the application of Public Law 86-272.

This contention requires us to construe section 171.002 of the tax code to determine whether the legislature intended for the franchise tax to be imposed on net taxable capital when a corporation is exempt from paying tax on earned surplus under Public Law 86-272.[3] Our primary

---

[2] If the difference between net taxable earned surplus and net taxable capital is less than zero, the difference should be computed as zero. *See* Tex. Tax Code Ann. § 171.002(c) (West 2002). This provision ensures that the full tax on net taxable capital is collected when the tax on net taxable earned surplus is less than the tax on net taxable capital.

[3] We have previously recognized that Public Law 86-272 has been incorporated in the Comptroller's rules, *see Rylander v. Fisher Controls Int'l, Inc.*, 45 S.W.3d 291, 297 (Tex. App.—Austin 2001, no pet.), but we have never considered a challenge to the Comptroller's longstanding practice of assessing only the taxable capital component of the franchise tax against qualifying out-of-state corporations.

6

goal in statutory construction is to ascertain and effectuate the legislature's intent. *Albertson's, Inc. v. Sinclair*, 984 S.W.2d 958, 960 (Tex. 1999). When construing a statute, we ascertain the intent of the legislature from the plain meaning of the actual language used. *Lenz v. Lenz*, 79 S.W.3d 10, 19 (Tex. 2002). Every word, phrase, clause, and sentence of a statute should be given effect. *Strasburger Enters., Inc. v. TDCT Ltd. P'ship*, 110 S.W.3d 566, 570 (Tex. App.—Austin 2003, no pet.). Additionally, the primary rule in statutory interpretation is that a court must give effect to legislative intent, considering the language of the statute, as well as its legislative history, the objective sought, and the consequences that would flow from alternative constructions. *Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 383 (Tex. 2000) (op. on reh'g). Although we are not bound by the Comptroller's interpretation, *see Rylander v. Fisher Controls Int'l, Inc.*, 45 S.W.3d 291, 302 (Tex. App.—Austin 2001, no pet.), "[t]he consistent construction by an administrative agency charged with effectuating the policy of an enactment carries very considerable weight." *Sergeant Enters. v. Strayhorn*, 112 S.W.3d 241, 250-51 (Tex. App.—Austin 2003, no pet.) (citing Felix Frankfurter, Some Reflections on the Reading of Statutes, 47 Colum. L. Rev. 527, 543 (1947)).

Viewing the Comptroller's rules in the context of the language of the statute, we find that the Comptroller has not ignored the statutory formula for calculating the franchise tax. When the legislature amended the franchise tax to add a tax based on income, it referred to that component as "taxable earned surplus." *See Anderson-Clayton Bros. Funeral Home*, 149 S.W.3d at 169. We find the legislature's use of the term *taxable* to be significant. Inherent in the term is the premise that the earned surplus is indeed taxable. Here, the parties agree that Public Law 86-272 prohibits the

7

imposition of a tax on INOVA's earned surplus. Accordingly, INOVA's earned surplus cannot be considered a *taxable* earned surplus under the statute.

The Comptroller's rule recognizes this fact by stating that a corporation may be subject to the taxable capital component, but not the taxable earned surplus component in light of Public Law 86-272. *See* 34 Tex. Admin. Code § 3.554. The rule acknowledges that an out-of-state corporation that only solicits orders in Texas has no *taxable* earned surplus. Thus, applying Public Law 86-272 to the formula in section 171.002 of the tax code, an out-of-state corporation's net taxable earned surplus will always be zero, and the tax on capital will always be greater.[4] When the statutory formula is applied to taxable earned surplus, the franchise tax will always be based on the foreign corporation's net taxable capital.

We agree that the franchise tax is one integrated tax. However, Public Law 86-272 exempts INOVA's earned surplus from taxation. Because INOVA has no taxable earned surplus, the calculation of its franchise tax is based solely on net taxable capital. Thus, the Comptroller's rule is not inconsistent with the statute. We uphold the Comptroller's rule and overrule INOVA's first issue.

**Is the taxable capital component measured by net income?**

INOVA contends in its second issue that the taxable capital component of the franchise tax is "imposed on, or measured by, net income," and, therefore, may not be imposed under

---

[4] This calculation is also reflected by the placement of a zero in the entry for net taxable earned surplus on INOVA's franchise tax reports.

Public Law 86-272. INOVA points to the method of computing taxable capital that includes a corporation's retained earnings as evidence that the tax is imposed on net income. INOVA also relies on case law discussing the Buck Act (4 U.S.C. § 106 (West 2005)) in which the franchise tax is considered an income tax. *See General Dynamics Corp. v. Bullock*, 547 S.W.2d 255 (Tex. 1976).

INOVA first argues that net income is an integral part of the taxable capital component of the franchise tax. The taxable capital component of the franchise tax is the stated stock value of the corporation plus its surplus. Tex. Tax Code Ann. § 171.101(a)(1) (West 2002). Surplus is defined as the net assets of a corporation minus its stated capital. *Id*. § 171.109(a)(1) (West Supp. 2004-05). INOVA points out that, under generally accepted accounting principles, the tax code's definition of surplus is also equal to a corporation's retained earnings. Retained earnings consist of a corporation's current net income plus its net income over time. *See* 34 Tex. Admin. Code Ann. § 3.547(c)(6) (retained earnings represent accumulated gains and losses of corporation to date). INOVA asserts that, because net income is included in the calculation of a corporation's taxable capital, the franchise tax is a "tax imposed on, or measured by net income" for the purposes of Public Law 86-272. However, other courts have rejected similar arguments.

In *Gillette Co. v. Michigan Dept. of Treasury*, the Michigan Court of Appeals considered whether Michigan's single business tax was a net income tax for the purposes of Public Law 86-272. *See* 198 Mich. App. 303, 306-07, 497 N.W.2d 595 (Mich Ct. App. 1993). The calculation of Michigan's single business tax begins with a corporation's federal taxable income, *see Gillette*, 198 Mich. App. at 309-310, which is then adjusted by a number of factors to arrive at

the tax base. This base is then apportioned, subjected to other adjustments, and multiplied by the appropriate rate to arrive at the tax. *Id*.

Applying Public Law 86-272, the court concluded that Michigan's single business tax, calculated in this manner, is not imposed on net income; rather it is imposed on the privilege of doing business. *Id*. at 308. Furthermore, the court held that the tax is not measured by net income because federal taxable income is only the starting point of the extensive adjustments required to compute the tax. *Id*. at 310-11.[5]

Similarly, a New Jersey court has held that the net worth component of New Jersey's business tax is not "imposed on, or measured by, net income" under Public Law 86-272. *See Clairol, Inc. v. Kingsley*, 262 A.2d 213, 216-17 (N.J. Super. Ct. App. Div. 1970). The New Jersey tax on net worth is measured by stockholder's book equity value. *See Roadway Express*, *Inc. v. Director, Division of Taxation*, 236 A.2d 577, 580 (N.J. 1967). One component of net worth or stockholder's book equity value is a corporation's retained earnings. *See Black's Law Dictionary* 1131 (7th ed. 2001) (stockholder's equity is capital contributed plus retained earnings). By implication, the court rejected the argument that a tax that is based in part on retained earnings is a tax imposed on or measured by net income under Public Law 86-272.

---

[5] The Supreme Court of Ohio also concluded that Michigan's single business tax is not "imposed on, or measured by, net income" in determining whether an Ohio taxpayer was entitled to an income tax credit for its single business tax paid to Michigan. *See Ardire v. Tracy, Tax Comm'r*, 674 N.E.2d 1155, 1156 (Ohio 1997). The court cited the *Gillette* opinion extensively and adopted its reasoning. *Id*. at 1158.

The legislative history of Public Law 86-272 also supports the conclusion that the law does not exempt the taxable capital component of the Texas franchise tax. INOVA argues that the purpose of Public Law 86-272 was to respond to the "creation of sprawling diverse [state] revenue systems" and that a narrow interpretation of the law would frustrate that objective. *See* S. Rep. No. 86-658, at 4 (1959). A review of the House and Senate conference reports on the legislation confirms that Congress was concerned about the burden imposed on interstate commerce by the lack of uniformity in state taxation of businesses and the growing cost of compliance. *See id*.; H.R. Conf. Rep. No. 86-1103 (1959). But both reports also recognize the limited nature of Public Law 86-272 and express the need for further study of the problem. *See* S. Rep. No. 86-658, at 4; H.R. Conf. Rep. No. 86-1103. The language of Public Law 86-272 and the conference reports indicate that the legislation was intended only to govern the narrow category of state net income taxes.[6] In fact, the language regarding "sprawling diverse revenue systems" cited by INOVA is contained in the section of the Senate report discussing the need for a committee to study the broader tax problem at a later date and does not state the specific purpose of Public Law 86-272. *See* S. Rep. No. 86-658, at 4-5.

Next, INOVA relies on the Texas Supreme Court's discussion of another federal law, the Buck Act, to insist that the capital component of the franchise tax is a net income tax under

---

[6] The section of the Senate report discussing minority views emphasized the limited nature of Public Law 86-272:

> It should be borne in mind that the subject of the bill is a tax on net income or a tax measured by net income. We are not here considering licensing or franchise regulations or fees which might truly set up barriers to interstate commerce.

S. Rep. No. 86-658, at 9 (1959).

Public Law 86-272. The Buck Act is a federal statute that allows a state to levy and collect state income taxes on persons residing in a federal area within the state. *See* 4 U.S.C. § 106(a). It defines an income tax as "any tax levied on, with respect to, or measured by net income, gross income, or gross receipts." *Id*. § 110(c). In *General Dynamics Corp. v. Bullock*, the supreme court held that the Texas franchise tax is an income tax for the purposes of the Buck Act. *See* 547 S.W.2d 255, 259 (Tex. 1976). The supreme court cited a Senate Finance Committee report explaining that Congress intended a broad definition for income tax under the Buck Act:

> The Congressional intent is strongly stated in the bill's Senate Report where it is stated that "[t]his definition [of income tax] . . . must of necessity cover a broad field because of the great variations to be found between the different State laws. The intent of your committee in laying down such a broad definition was to include therein any State tax (whether known as a corporate-franchise tax, or business-privilege tax, or any other name) if it is levied on, with respect to, or measured by net income, gross income, or gross receipts."

*General Dynamics*, 547 S.W.2d at 257 (quoting Report of the Senate Finance Committee of May 16, 1940 at page 5; 76th Congress, 3rd Session; Report No. 1625, Calendar No. 1692, as stated in *Humble Oil & Refining Co. v. Calvert*, 478 S.W.2d 926, 929 (Tex. 1972)).

Unlike the Buck Act, which broadened the states' authority to tax, Public Law 86-272 limits the states' power to tax. Where a federal law explicitly supercedes a state's powers, we construe the preemption provision more narrowly than an identical phrase in another context. *Moore v. Brunswick Bowling & Billiards Corp.*, 889 S.W.3d 246, 249 (Tex. 1994). When Congress enacted Public Law 86-272, the Buck Act had been on the books for nineteen years. Had Congress intended Public Law 86-272 to be as broad as the Buck Act, it would have used similar language. Instead,

12

Congress omitted any reference to gross income or gross receipts and only extended an exemption to net income taxes.[7] In light of the differences in language, history, and purpose of the two statutes, we cannot conclude that Congress intended Public Law 86-272 to cover as broad an array of state taxes as the Buck Act.

Thus, we read Public Law 86-272 to do exactly what it says. It exempts certain businesses from state taxes imposed on net income or measured by net income. Extending the exemption in Public Law 86-272 to taxes that only use net income as a factor in calculating another tax would be inconsistent with the stated intent of the law, the longstanding interpretation by the Comptroller, as well as the decisions of all of the courts that have considered this issue. Because we interpret the definition of net income in Public Law 86-272 narrowly, we hold that the capital component of the franchise tax is not a net income tax under Public Law 86-272 and therefore INOVA is not exempt from paying franchise tax on its net taxable capital.

**Commerce Clause**

In its final issue, INOVA contends that the corporation is not subject to the state franchise tax because it lacks a substantial nexus with Texas. Those engaged in interstate commerce may be required to pay their fair share of state taxes consistent with the Commerce Clause so long as the tax (1) is applied to an activity with a substantial nexus with the taxing state, (2) is fairly

---

[7] We note that the concept of gross receipts or gross income is quite distinct from net income. Gross income or gross receipts do not take a corporation's expenses into account, while net income is defined as the "excess of all revenues and gains for a period over all expenses and losses of the period." *Black's Law Dictionary* 1040 (6th ed. 1990). Thus, a corporation may have considerable gross receipts or gross income, yet have no net income.

13

apportioned, (3) does not discriminate against interstate commerce, and (4) is fairly related to the services provided by the state. *Quill Corp. v. North Dakota,* 504 U.S. 298, 314 (1993); *Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274, 279 (1977). The Supreme Court has established and followed a bright-line rule in determining whether a taxing state has a sufficient nexus with the taxpayer to allow taxation. This bright-line rule states that physical presence in a state establishes a sufficient nexus to allow taxation under the Commerce Clause. *See Quill*, 504 U.S. at 314; *National Bellas Hess, Inc. v. Dept. of Revenue of Ill.*, 386 U.S. 753, 759-60 (1967); *Rylander v. Bandag Licensing Corp.,* 18 S.W.3d 296, 299 (Tex. App.—Austin 2000, pet. denied). This line draws a clear distinction between those companies that merely communicate with residents of the taxing state by way of mail or common carrier, as part of a general interstate business, and those who maintain retail outlets, solicitors, or property within the state. *See Quill,* 504 U.S. at 307; *Bellas Hess,* 386 U.S. at 758. While the tax in question in *Quill* was a use tax, this Court has applied this same bright-line test when determining whether the franchise tax is consistent with the Commerce Clause. *Bandag Licensing,* 18 S.W.3d at 299.

Although it is undisputed that INOVA employs a Texas resident who spends seven to ten days per month soliciting orders in the state, INOVA contends that this presence in the state is *de minimus*. INOVA points to several cases in which no nexus was found after a company sent employees into a state.[8] However, in each of these cases, the company's presence was much more

---

[8] INOVA discusses Comptroller's Decision No. 36,590 (2000), STAR Document No. 200001136H, stating that the Comptroller based its ruling on the Commerce Clause. This decision does not mention the Commerce Clause; rather it is a determination that certain business activities within the state were *de minimus* and did not amount to more than solicitation for the purposes of Public Law 86-272. *See id*. at 13.

limited than INOVA's. In *In Re: Intercard*, the Kansas Supreme Court held that, where an out-of-state corporation's only presence in the state was sending technicians into the state to install equipment for a total of forty-four hours over one three-month period, that presence was not sufficient to establish a substantial nexus under the Commerce Clause. *See* 14 P.3d 1111, 1113 (Kan. 2000). In *Florida v. Share Inter'l, Inc.*, a Florida court of appeals held that the presence of employees for three days per year at a national chiropractic seminar held in Florida did not establish a substantial nexus with that state. *See* 667 So. 2d 226, 230 (Fla. Dist. Ct. App. 1995).[9] These two cases involving short visits to a state are distinguishable from the present facts. Here, INOVA has a permanent sales presence in Texas. INOVA's employee lives in Texas, works from his home in Texas, and systematically solicits orders from new and existing customers in Texas. This sustained activity is clearly encompassed by the bright-line rule equating physical presence in the state to a substantial nexus. *See Quill*, 504 U.S. at 314; *Bellas Hess*, 386 U.S. at 759-60; *Bandag Licensing*, 18 S.W.3d at 299. Because INOVA has a physical presence in Texas, we hold that the Comptroller's imposition of the franchise tax does not violate the Commerce Clause of the federal constitution. We overrule INOVA's final issue.

## CONCLUSION

We hold that the imposition of the franchise tax on INOVA's net taxable capital alone is consistent with the statute, that Public Law 86-272 does not exempt INOVA from paying the state

---

[9] INOVA also cites *Arkansas v. Troll Book Clubs*, where a company provided incentives for teachers to solicit orders on behalf of the company. *See* 871 S.W.2d 389, 390 (Ark. 1994). However, this case is not relevant to our determination because it was decided based on the fact that the teachers were not agents of the company. *See id*. at 392-93.

franchise tax on its taxable capital, and that INOVA has a substantial nexus with the state. Accordingly, we affirm the judgment of the district court.

_____

Bea Ann Smith, Justice

Before Chief Justice Law, Justices B. A. Smith and Pemberton

Affirmed

Filed:   May 26, 2005