NO. 07-09-00250-CV

 

IN THE COURT OF APPEALS

 

FOR THE
SEVENTH DISTRICT OF TEXAS

 

AT
AMARILLO

 

PANEL B

 



JULY
14, 2010

 



 

GALLAND HENNING NOPAK, INC., APPELLANT

 

v.

 

SUSAN COMBS, SUCCESSOR TO CAROLE KEETON STRAYHORN, COMPTROLLER OF PUBLIC
ACCOUNTS OF THE STATE OF TEXAS; AND GREG ABBOTT, ATTORNEY GENERAL OF THE STATE
OF TEXAS, APPELLEES 



 



 

 FROM THE 345TH DISTRICT COURT OF TRAVIS
COUNTY;

 

NO. D-1-GN-06-001409; HONORABLE C. W. DUNCAN, JR., JUDGE



 



 

Before QUINN,
C.J., and CAMPBELL and HANCOCK, JJ.

 

 

OPINION

            Appellant,
Galland Henning Nopak, Inc.
(Nopak), appeals an order of the trial court granting
defendants’, Carole Keeton Strayhorn, Comptroller of
Public Accounts of the State of Texas,[1]
and Greg Abbott, Texas Attorney General (collectively, “the State”), motion for
summary judgment and denying Nopak’s motion for
summary judgment.  We affirm.

Background

            The
Texas Comptroller of Public Accounts discovered that Nopak,
a Wisconsin corporation that manufactures and sells pneumatic and hydraulic
cylinders and valves, had been filing employee wages for its Texas-based
employee, David Sebbas.  Due to this discovery, the Comptroller
established a franchise tax account and gave Nopak
thirty days to file its franchise tax reports. 
After Nopak failed to respond to the
Comptroller’s notice, the Comptroller estimated Nopak’s
franchise tax liability for the years of 1995 through 2004.  Nopak subsequently
requested a redetermination of the assessment resulting in the Comptroller
issuing a decision finding that there was a sufficient nexus between Nopak’s business and Texas to justify the imposition of the
franchise tax assessed.  Nopak then filed the instant lawsuit claiming that Nopak’s business had insufficient nexus with Texas to allow
the assessment of franchise taxes.  

            As
a result of Nopak’s lawsuit, a hearing was held
before the Administrative Law Judge of the Comptroller’s Office.  During this hearing, Nopak
called Sebbas and Joseph Dechant,
general sales manager for Nopak, to testify.  Sebbas and Dechant testified that Sebbas was
employed by Nopak as a regional manager, servicing
the needs of distributors in seven and a half states, including Texas.  Dechant and Sebbas then testified regarding the responsibilities of a
regional sales manager.[2]  After requesting some briefing from the
parties, the Administrative Law Judge of the Comptroller’s Office found that Nopak had a substantial nexus with Texas and was,
therefore, subject to the franchise tax assessment.  Nopak appealed this
decision to the district court.  Both
parties filed motions for summary judgment based on the evidence that had been
admitted at the administrative law hearing.[3]  The district court granted the State’s
traditional summary judgment motion and denied Nopak’s
summary judgment motion.  Nopak timely appealed.

            By
one issue, Nopak appeals the district court’s grant
of summary judgment in favor of the State and denial of Nopak’s
motion for summary judgment.  Nopak contends that the imposition of the Texas franchise
tax against Nopak constitutes a violation of the
United States Constitution because Nopak does not
have a substantial nexus with the State of Texas.

Standard of Review

            We
review a trial court's decision to grant or to deny a motion for summary
judgment de novo.  See Tex. Mun.
Power Agency v. Pub. Util. Comm'n of Tex., 253 S.W.3d 184, 192 (Tex. 2007).  Although the denial of summary judgment is
ordinarily not appealable, we may review such a denial when both parties moved
for summary judgment and the trial court granted one and denied the other.  Id.  When reviewing competing motions for summary
judgment, we review the summary judgment evidence presented by each party,
determine all questions presented, and render the judgment that the trial court
should have rendered.  Id.;
FWT, Inc. v. Haskin Wallace Mason Prop. Mgmt.,
L.L.P., 301 S.W.3d 787,
792 (Tex.App.--Fort Worth 2009, pet. denied).  When the trial court does not specify the
basis on which it granted summary judgment, the judgment will be affirmed on
any meritorious ground expressly presented in the motion.  State Farm Fire & Cas. Co. v. S.S., 858 S.W.2d 374, 380 (Tex.
1993).

Law and Analysis

Nopak contends that it is entitled to
summary judgment because it established, as a matter of law, that it lacks a
substantial nexus with the state and, therefore, the imposition of the Texas
franchise tax would be an unconstitutional abridgement of interstate
commerce.  The State responds that the
evidence established, as a matter of law, that the activities of Nopak created a substantial nexus between the company and
Texas and, therefore, the assessment of the Texas franchise tax against Nopak was constitutional and authorized by the laws of
Texas.

The United States Constitution
specifically grants Congress the power to regulate commerce among the several
states, which implicitly prohibits the states from actions that interfere with
interstate commerce, such as taxation.  See U.S. Const.
art. I, § 8; Rylander v. Bandag
Licensing Corp., 18 S.W.3d 296, 298-99 (Tex.App.—Austin
2000, pet. denied).  However, the
Commerce Clause does not prohibit all direct state taxation of interstate
commerce.  Rylander,
18 S.W.3d at 299. 
A state tax on a foreign corporation will be sustained if the “tax is
applied to an activity with a substantial nexus with the taxing State, is
fairly apportioned, does not discriminate against interstate commerce, and is
fairly related to the services provided by the State.”  Complete Auto Transit, Inc. v. Brady,
430 U.S. 274, 279, 97 S.Ct. 1076, 51
L.Ed.2d 326 (1977).  Nopak’s challenge to the assessment of the Texas franchise
tax is limited to whether a substantial nexus exists between Nopak and Texas.

Texas imposes a franchise tax on each
corporation that does business in the state. 
Tex. Tax Code Ann. §
171.001(a) (Vernon 2008); INOVA Diagnostics, Inc. v. Strayhorn,
166 S.W.3d 394, 396 (Tex.App.—Austin 2005, pet.
denied).  A foreign corporation has a substantial
nexus with Texas if the corporation can be taxed without violating the United
States Constitution.  34
Tex. Admin. Code §§ 3.546(b) (2010)
(Comptroller of Pub. Accounts, Taxable
Capital; Nexus), 3.554(a) (2010) (Comptroller of Pub. Accounts, Earned
Surplus: Nexus).  The Supreme Court has
established a bright-line rule to determine whether a taxing state has a
sufficient nexus with the taxpayer to allow taxation: does the taxpayer have a
“physical presence in [the] state.”  INOVA
Diagnostics, Inc., 166 S.W.3d at 402 (citing Quill Corp. v. North Dakota,
504 U.S. 298, 314, 112 S.Ct. 1904, 119 L.Ed.2d 91
(1992)).  This bright-line test
distinguishes companies whose only connection to the taxing state is by common
carrier or the United States mail from those that have a physical presence in
the taxing state, such as a small sales force, plant, or office.[4]  See Quill Corp., 504 U.S. at
315.  Thus, the constitutionality of the
imposition of the Texas franchise tax on Nopak
depends on the determination of whether Nopak had a
physical presence in Texas.  As a guide
to this determination, the Comptroller has indicated that a representative of a
foreign corporation in the state “to promote or induce sales of the foreign
corporation’s goods or services . . .” is indicative of a physical presence in
the state.  34 Tex. Admin. Code § 3.546(c)(4).

The facts in this case are not in
dispute.  The dispute revolves around
whether the activities of Sebbas were sufficient to
create a substantial nexus between Nopak and Texas.  The evidence establishes that Nopak is a foreign corporation that sells products in
Texas; Sebbas was a regional manager for Nopak during the relevant time period and Texas was
included in his region; and, other than the activities of Sebbas,
Nopak’s only connection to the state was by common
carrier and the United States mail.  It
is the job of Nopak’s regional managers “to support
the sales efforts of our distribution . . . companies with whom we have
agreements.”  The regional managers are
“more or less our liaison” with the distributors of Nopak’s
products.  Sebbas
described his job as “mak[ing]
sure that Nopak . . . is taking care of . . . the
distributor, period, and that they are satisfied with their services.”  

Being mindful that a corporation has
a physical presence with the state if, inter
alia, it has a sales force in the state, see Quill Corp., 504
U.S. at 315, we will look to the types of activities that Sebbas
performed in the state to determine whether they were sufficient to establish that
Nopak had a substantial nexus with the state.  Dechant testified
that one purpose of Sebbas’s presence in Texas was to
allow customers to see a representative of Nopak
periodically “to keep us in a dominant position among the salespeople.”  Dechant further
testified that Sebbas was presented by many
distributors to be an expert on the Nopak product
line and able to answer questions that the customers of the distributor might
have.  Dechant
and Sebbas both testified that Sebbas
would communicate advantages of Nopak products to
distributors and their customers.  While
we fully acknowledge that Sebbas was not authorized
to directly solicit or take orders for Nopak’s
products, we conclude that his Texas activities were “to promote or induce
sales” of Nopak’s products and, therefore, were
sufficient to conclusively establish that Nopak had a
physical presence in the state.  See
Tyler Pipe Indus. Inc. v. Wash. State Dep’t of Revenue, 483 U.S. 232,
250, 107 S.Ct. 2810, 97 L.Ed.2d 199 (1987) (approving
of the state court’s holding that “the crucial factor governing nexus is
whether the activities performed in this state on behalf of the taxpayer are
significantly associated with the taxpayer's ability to establish and maintain
a market in this state ....” (emphasis added)).  As such, we affirm the trial court’s implied
determination that the assessment of the Texas franchise tax against Nopak does not violate the Commerce Clause.

Nopak further contends that Sebbas’s activities in Texas were, at best, de minimis activities
that should be ignored for taxing purposes. 
The substantial nexus requirement requires more than de minimis
contact with the state before taxes may be assessed against a foreign company
doing business through interstate commerce. 
See Wis. Dep’t of Revenue v. William Wrigley, Jr., Co.,
505 U.S. 214, 231, 112 S.Ct. 2447, 120
L.Ed.2d 174 (1992).  Texas has
defined de minimis
activities to include “those [activities] that, when taken together, establish
only a trivial additional connection with Texas.  An activity regularly conducted within Texas
pursuant to a company policy or on a continuous basis shall normally not be
considered trivial.”  34
Tex. Admin. Code §
3.554(c)(3).  An
activity is more than de minimis if it serves an independent business function,
separate from requesting orders, that the company would have reason to engage
in whether or not it employed a sales force. 
See Wis. Dep’t of Revenue, 505 U.S. at 228-29.  In Texas, an example of an activity that is
an independent business function in the state is the “investigating, handling,
or otherwise assisting in resolving customer complaints.”  34 Tex. Admin. Code § 3.554(d)(7).

Looking at the activities performed
by Sebbas on behalf of Nopak,
the evidence establishes that his primary job was investigating, handling, or
otherwise assisting in resolving customer complaints.  While Nopak focuses
on the infrequency with which Sebbas would go with a
distributor to the distributor’s customer to “put out fires” relating to those
customer’s complaints, there was evidence presented that Sebbas
would take similar actions when it was a distributor that had a complaint
regarding Nopak’s products or service.  Based on the testimony of Dechant
and Sebbas, it is hard to identify any services that Sebbas provided Nopak beyond
extolling the virtues of Nopak’s products to
distributors and attempting to resolve customer complaints.  In addition, it appears that it is Nopak’s policy to have regional managers located throughout
the country so that Nopak will have a continuous
presence with its distributors. That the perception of Nopak
having a local physical presence is a reason for Nopak
to employ regional managers is shown through Dechant’s
testimony that, “There’s an old axiom in our business that out of sight [is]
out of mind, so we firmly believe that they need to see a representative of our
company periodically . . . .”  Thus, Sebbas’s activities were performed in accordance with a
company policy and on a continuous basis. 
Consequently, we affirm the trial court’s implied finding that Sebbas’s activities in Texas were more than de minimis
and, therefore, justified the assessment of Texas franchise taxes against Nopak.  

Conclusion

For the foregoing reasons, we
conclude that the trial court did not err in granting the State’s motion for
summary judgment and denying Nopak’s motion for
summary judgment.  Therefore, we affirm
the judgment of the trial court.

 

                                                                                                Mackey
K. Hancock

                                                                                                            Justice

 











[1] Susan Combs is the
current Texas Comptroller of Public Accounts and, as a successor in interest,
is a party to this appeal in her official capacity.





[2] The testimony
regarding the responsibilities of Nopak’s regional
sales managers will be addressed in the analysis below.





[3] Both Dechant and Sebbas were deceased
by the time that the district court considered the competing motions for
summary judgment.





[4] We fully agree with Nopak’s contention that the physical presence required in Quill
Corp. is not satisfied simply by Sebbas having
chosen to live in Texas.