NO. 07-09-00250-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

JULY 14, 2010

_____

GALLAND HENNING NOPAK, INC., APPELLANT

v.

SUSAN COMBS, SUCCESSOR TO CAROLE KEETON
STRAYHORN, COMPTROLLER OF PUBLIC ACCOUNTS
OF THE STATE OF TEXAS; AND GREG ABBOTT,
ATTORNEY GENERAL OF THE STATE OF TEXAS,
APPELLEES

_____

FROM THE 345TH DISTRICT COURT OF TRAVIS COUNTY;

NO. D-1-GN-06-001409; HONORABLE C. W. DUNCAN, JR., JUDGE

_____

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

**OPINION**

Appellant, Galland Henning Nopak, Inc. (Nopak), appeals an order of the trial

court granting defendants', Carole Keeton Strayhorn, Comptroller of Public Accounts of

the State of Texas,[1] and Greg Abbott, Texas Attorney General (collectively, "the State"),

---

[1] Susan Combs is the current Texas Comptroller of Public Accounts and, as a successor in interest, is a party to this appeal in her official capacity.

motion for summary judgment and denying Nopak's motion for summary judgment. We affirm.

Background

The Texas Comptroller of Public Accounts discovered that Nopak, a Wisconsin corporation that manufactures and sells pneumatic and hydraulic cylinders and valves, had been filing employee wages for its Texas-based employee, David Sebbas. Due to this discovery, the Comptroller established a franchise tax account and gave Nopak thirty days to file its franchise tax reports. After Nopak failed to respond to the Comptroller's notice, the Comptroller estimated Nopak's franchise tax liability for the years of 1995 through 2004. Nopak subsequently requested a redetermination of the assessment resulting in the Comptroller issuing a decision finding that there was a sufficient nexus between Nopak's business and Texas to justify the imposition of the franchise tax assessed. Nopak then filed the instant lawsuit claiming that Nopak's business had insufficient nexus with Texas to allow the assessment of franchise taxes.

As a result of Nopak's lawsuit, a hearing was held before the Administrative Law Judge of the Comptroller's Office. During this hearing, Nopak called Sebbas and Joseph Dechant, general sales manager for Nopak, to testify. Sebbas and Dechant testified that Sebbas was employed by Nopak as a regional manager, servicing the needs of distributors in seven and a half states, including Texas. Dechant and Sebbas then testified regarding the responsibilities of a regional sales manager.[2] After

---

[2] The testimony regarding the responsibilities of Nopak's regional sales managers will be addressed in the analysis below.

requesting some briefing from the parties, the Administrative Law Judge of the Comptroller's Office found that Nopak had a substantial nexus with Texas and was, therefore, subject to the franchise tax assessment. Nopak appealed this decision to the district court. Both parties filed motions for summary judgment based on the evidence that had been admitted at the administrative law hearing.[3] The district court granted the State's traditional summary judgment motion and denied Nopak's summary judgment motion. Nopak timely appealed.

By one issue, Nopak appeals the district court's grant of summary judgment in favor of the State and denial of Nopak's motion for summary judgment. Nopak contends that the imposition of the Texas franchise tax against Nopak constitutes a violation of the United States Constitution because Nopak does not have a substantial nexus with the State of Texas.

Standard of Review

We review a trial court's decision to grant or to deny a motion for summary judgment *de novo*. See Tex. Mun. Power Agency v. Pub. Util. Comm'n of Tex., 253 S.W.3d 184, 192 (Tex. 2007). Although the denial of summary judgment is ordinarily not appealable, we may review such a denial when both parties moved for summary judgment and the trial court granted one and denied the other. Id. When reviewing competing motions for summary judgment, we review the summary judgment evidence presented by each party, determine all questions presented, and render the judgment

---

[3] Both Dechant and Sebbas were deceased by the time that the district court considered the competing motions for summary judgment.

that the trial court should have rendered.  Id.; FWT, Inc. v. Haskin Wallace Mason Prop. Mgmt., L.L.P., 301 S.W.3d 787, 792 (Tex.App.--Fort Worth 2009, pet. denied).  When the trial court does not specify the basis on which it granted summary judgment, the judgment will be affirmed on any meritorious ground expressly presented in the motion. State Farm Fire & Cas. Co. v. S.S., 858 S.W.2d 374, 380 (Tex. 1993).

Law and Analysis

Nopak contends that it is entitled to summary judgment because it established, as a matter of law, that it lacks a substantial nexus with the state and, therefore, the imposition of the Texas franchise tax would be an unconstitutional abridgement of interstate commerce.  The State responds that the evidence established, as a matter of law, that the activities of Nopak created a substantial nexus between the company and Texas and, therefore, the assessment of the Texas franchise tax against Nopak was constitutional and authorized by the laws of Texas.

The United States Constitution specifically grants Congress the power to regulate commerce among the several states, which implicitly prohibits the states from actions that interfere with interstate commerce, such as taxation.  See U.S. CONST. art. I, § 8; Rylander v. Bandag Licensing Corp., 18 S.W.3d 296, 298-99 (Tex.App.—Austin 2000, pet. denied).  However, the Commerce Clause does not prohibit all direct state taxation of interstate commerce.  Rylander, 18 S.W.3d at 299.  A state tax on a foreign corporation will be sustained if the "tax is applied to an activity with a substantial nexus with the taxing State, is fairly apportioned, does not discriminate against interstate commerce, and is fairly related to the services provided by the State."  Complete Auto

4

Transit, Inc. v. Brady, 430 U.S. 274, 279, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977). Nopak's challenge to the assessment of the Texas franchise tax is limited to whether a substantial nexus exists between Nopak and Texas.

Texas imposes a franchise tax on each corporation that does business in the state. TEX. TAX CODE ANN. § 171.001(a) (Vernon 2008); INOVA Diagnostics, Inc. v. Strayhorn, 166 S.W.3d 394, 396 (Tex.App.—Austin 2005, pet. denied). A foreign corporation has a substantial nexus with Texas if the corporation can be taxed without violating the United States Constitution. 34 TEX. ADMIN. CODE §§ 3.546(b) (2010) (Comptroller of Pub. Accounts, Taxable Capital; Nexus), 3.554(a) (2010) (Comptroller of Pub. Accounts, Earned Surplus: Nexus). The Supreme Court has established a bright-line rule to determine whether a taxing state has a sufficient nexus with the taxpayer to allow taxation: does the taxpayer have a "physical presence in [the] state." INOVA Diagnostics, Inc., 166 S.W.3d at 402 (citing Quill Corp. v. North Dakota, 504 U.S. 298, 314, 112 S.Ct. 1904, 119 L.Ed.2d 91 (1992)). This bright-line test distinguishes companies whose only connection to the taxing state is by common carrier or the United States mail from those that have a physical presence in the taxing state, such as a small sales force, plant, or office.[4] See Quill Corp., 504 U.S. at 315. Thus, the constitutionality of the imposition of the Texas franchise tax on Nopak depends on the determination of whether Nopak had a physical presence in Texas. As a guide to this determination, the Comptroller has indicated that a representative of a foreign corporation in the state "to promote or induce sales of the foreign corporation's goods or

_____

[4] We fully agree with Nopak's contention that the physical presence required in Quill Corp. is not satisfied simply by Sebbas having chosen to live in Texas.

5

services . . ." is indicative of a physical presence in the state. 34 TEX. ADMIN. CODE § 3.546(c)(4).

The facts in this case are not in dispute. The dispute revolves around whether the activities of Sebbas were sufficient to create a substantial nexus between Nopak and Texas. The evidence establishes that Nopak is a foreign corporation that sells products in Texas; Sebbas was a regional manager for Nopak during the relevant time period and Texas was included in his region; and, other than the activities of Sebbas, Nopak's only connection to the state was by common carrier and the United States mail. It is the job of Nopak's regional managers "to support the sales efforts of our distribution . . . companies with whom we have agreements." The regional managers are "more or less our liaison" with the distributors of Nopak's products. Sebbas described his job as "mak[ing] sure that Nopak . . . is taking care of . . . the distributor, period, and that they are satisfied with their services."

Being mindful that a corporation has a physical presence with the state if, *inter alia*, it has a sales force in the state, see Quill Corp., 504 U.S. at 315, we will look to the types of activities that Sebbas performed in the state to determine whether they were sufficient to establish that Nopak had a substantial nexus with the state. Dechant testified that one purpose of Sebbas's presence in Texas was to allow customers to see a representative of Nopak periodically "to keep us in a dominant position among the salespeople." Dechant further testified that Sebbas was presented by many distributors to be an expert on the Nopak product line and able to answer questions that the customers of the distributor might have. Dechant and Sebbas both testified that Sebbas

6

would communicate advantages of Nopak products to distributors and their customers. While we fully acknowledge that Sebbas was not authorized to directly solicit or take orders for Nopak's products, we conclude that his Texas activities were "to promote or induce sales" of Nopak's products and, therefore, were sufficient to conclusively establish that Nopak had a physical presence in the state. See Tyler Pipe Indus. Inc. v. Wash. State Dep't of Revenue, 483 U.S. 232, 250, 107 S.Ct. 2810, 97 L.Ed.2d 199 (1987) (approving of the state court's holding that "the crucial factor governing nexus is whether the activities performed in this state on behalf of the taxpayer are significantly associated with the taxpayer's ability to establish and maintain a market in this state ...." (emphasis added)). As such, we affirm the trial court's implied determination that the assessment of the Texas franchise tax against Nopak does not violate the Commerce Clause.

Nopak further contends that Sebbas's activities in Texas were, at best, *de minimis* activities that should be ignored for taxing purposes. The substantial nexus requirement requires more than *de minimis* contact with the state before taxes may be assessed against a foreign company doing business through interstate commerce. See Wis. Dep't of Revenue v. William Wrigley, Jr., Co., 505 U.S. 214, 231, 112 S.Ct. 2447, 120 L.Ed.2d 174 (1992). Texas has defined *de minimis* activities to include "those [activities] that, when taken together, establish only a trivial additional connection with Texas. An activity regularly conducted within Texas pursuant to a company policy or on a continuous basis shall normally not be considered trivial." 34 TEX. ADMIN. CODE § 3.554(c)(3). An activity is more than *de minimis* if it serves an independent business function, separate from requesting orders, that the company would have reason to

engage in whether or not it employed a sales force. See Wis. Dep't of Revenue, 505 U.S. at 228-29. In Texas, an example of an activity that is an independent business function in the state is the "investigating, handling, or otherwise assisting in resolving customer complaints." 34 TEX. ADMIN. CODE § 3.554(d)(7).

Looking at the activities performed by Sebbas on behalf of Nopak, the evidence establishes that his primary job was investigating, handling, or otherwise assisting in resolving customer complaints. While Nopak focuses on the infrequency with which Sebbas would go with a distributor to the distributor's customer to "put out fires" relating to those customer's complaints, there was evidence presented that Sebbas would take similar actions when it was a distributor that had a complaint regarding Nopak's products or service. Based on the testimony of Dechant and Sebbas, it is hard to identify any services that Sebbas provided Nopak beyond extolling the virtues of Nopak's products to distributors and attempting to resolve customer complaints. In addition, it appears that it is Nopak's policy to have regional managers located throughout the country so that Nopak will have a continuous presence with its distributors. That the perception of Nopak having a local physical presence is a reason for Nopak to employ regional managers is shown through Dechant's testimony that, "There's an old axiom in our business that out of sight [is] out of mind, so we firmly believe that they need to see a representative of our company periodically . . . ." Thus, Sebbas's activities were performed in accordance with a company policy and on a continuous basis. Consequently, we affirm the trial court's implied finding that Sebbas's activities in Texas were more than *de minimis* and, therefore, justified the assessment of Texas franchise taxes against Nopak.

8

Conclusion

For the foregoing reasons, we conclude that the trial court did not err in granting the State's motion for summary judgment and denying Nopak's motion for summary judgment.  Therefore, we affirm the judgment of the trial court.


Mackey K. Hancock
                                                            Justice