general dynamics 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-95-00341-CV







General Dynamics Corporation, Appellant




v.




John Sharp, Comptroller of Public Accounts of the State of Texas;


Martha Whitehead, Successor in Office to Kay Bailey Hutchison, Treasurer of


the State of Texas; and Dan Morales, Attorney General of the State of Texas, Appellees








FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT


NO. 92-11498, HONORABLE W. JEANNE MEURER, JUDGE PRESIDING








 General Dynamics Corporation appeals from a summary judgment granted to
appellees (1) (collectively the "Comptroller") in a tax-protest suit. See Tex. Tax Code Ann.
§§ 112.051-112.060 (West 1992 & Supp. 1996). Primarily at issue is whether the earned surplus
portion of the amended Texas franchise tax is unconstitutionally retroactive. General Dynamics
also contends that Texas' single-factor method of apportioning its Texas franchise tax base violates
the United States and Texas Constitutions. We will affirm the trial court's judgment.



THE CONTROVERSY


1. The Franchise Tax Act

 a. The Franchise Tax Base

 In 1905, the Texas Legislature enacted the Franchise Tax Act. Acts of 1905, 29th
Leg., ch. 19, p. 21, § 1. The franchise tax is levied annually on corporations that are
incorporated in Texas or that conduct business in Texas, for the privilege of doing business in this
State. Tex. Tax Code Ann. § 171.001 (West 1992 & Supp. 1996); United North & South Dev.
Co. v. Health, 78 S.W.2d 650, 652 (Tex. Civ. App.--Austin 1935, writ ref'd). The amount of
franchise tax levied should approximate the value of this privilege. Sterling Oil & Ref. Co. v.
Isbell, 202 S.W.2d 300, 302 (Tex. Civ. App.--Austin 1947, no writ). "The formula used in the
franchise tax is the valuation of the privilege granted by the Legislature." General Dynamics Co.
v. Bullock, 547 S.W.2d 255, 258 (Tex. 1977), cert. denied, 434 U.S. 1009 (1978). However,
devising a formula that accurately assesses the value of each corporation's privilege has not been
a simple task.

 Prior to 1992, the franchise tax was based solely on a corporation's taxable capital. 
A 1991 amendment to the franchise tax changed the tax base to the higher of taxable capital or
earned surplus. (2) Tex. Tax Code Ann. § 171.002 (West 1992). Because the franchise tax was
based solely on taxable capital prior to the amendment, capital-intensive industries bore the brunt
of the tax, even in unprofitable years. On the other hand, service industries, even those
generating large profits, did not pay as much, unless they were also capital intensive. The 1991
amendment to the franchise tax reapportioned the tax base.



 b. Apportioning the Tax Base

 The portion of a multi-state corporation's taxable capital and earned surplus subject
to the Texas franchise tax is calculated by using a single-factor, gross-receipts apportionment
formula ("the Texas formula"). Tex. Tax Code Ann. §§ 171.103, 171.1031, 171.105, 171.1051
(West 1992 & Supp. 1996). Gross receipts are generated from business and investment activities,
such as selling goods and services, receiving dividends and interest, and realizing capital gains. 
Id. A corporation's gross receipts generated in Texas are divided by the corporation's total world-wide gross receipts to arrive at a fraction representing the corporation's percentage of business
in Texas. This percentage is then multiplied by the total tax base to calculate the amount of tax
base apportionable to Texas. Tex. Tax Code Ann. § 171.106 (West 1992). The apportioned tax
base is then multiplied by the tax rate to determine a corporation's Texas franchise tax liability. 
See Tex. Tax Code Ann. §§ 171.002, 171.006, 171.110 (West 1992 & Supp. 1996).

 From 1969 to 1988 Texas allowed corporations to use either the single-factor
method of apportionment or a multiple-factor test. See Act of Sept. 6, 1969, 61st Leg., 2d C.S.,
ch. 1, art. 7, § 1, 1969 Tex. Gen. Laws 95, 96 repealed by Act of March 1, 1989, 71st Leg.,
R.S., § 2, 1989 Tex. Gen. Laws 200. The multiple-factor test was repealed in 1989. Id. Now,
the single-factor method of apportioning a corporation's tax liability is the only method allowed
by law in Texas. Tex. Tax Code Ann. § 171.106 (West 1992).



2. Factual Background

 General Dynamics' situation in this appeal is somewhat unique. In 1984, General
Dynamics entered into a contract with the United States military to manufacture 720 F-16 fighter
jets. Over a period of seven years, from 1984 to 1991, General Dynamics manufactured the F-16s
and periodically delivered the jets to a military base in Texas. (3) Periodically, the government paid
General Dynamics for the F-16s as the contract progressed. Thus, General Dynamics received
profits each year from the manufacture and sale of the F-16s. In total, General Dynamics was
paid approximately $974 million in profit from the contract.

 For federal income tax purposes, however, General Dynamics chose to utilize the
"completed contract" method of reporting its profit. See Internal Revenue Code § 451 (26 U.S.C.
§ 451 (1994)). Under the "completed contract" method, a taxpayer realizes income for tax
purposes in the year in which the contract was completed, in this case 1991. Id. Thus, for
federal income tax purposes, General Dynamics realized all of the income earned over the life of
the contract in 1991.

 In 1991, the Texas Legislature amended the Franchise Tax Act to add earned
surplus as a method of calculating a corporation's tax liability. Tex. Tax Code Ann. §§ 171.002,
171.110 (West 1992 & Supp. 1996). The amendment became effective on January 1, 1992, and
added a corporation's earned surplus for the preceding year as an alternative tax base. (4) The
earned surplus portion of the franchise tax relies primarily on net income as calculated for federal
income tax purposes. See Tex. Tax Code Ann. § 171.110(a)(1) (West 1992 & Supp. 1996). 
Thus, General Dynamics owed franchise tax on the full $974 million realized in 1991 for federal
income tax purposes. (5)

 As a result, General Dynamics paid $33,872,003 of its franchise tax under protest.
See Tex. Tax Code Ann. §§ 112.051-112.060 (West 1992 & Supp. 1996). General Dynamics
filed suit against the Comptroller in an effort to recoup the protested franchise tax. The district
court granted the Comptroller's motion for summary judgment, and General Dynamics appeals
to this Court.



3. The Parties' Contentions

 General Dynamics' primary contention is that the earned surplus portion of the
franchise tax violates the Retroactivity Provision of the Texas Constitution. See Tex. Const. art.
I, § 16. General Dynamics argues that the earned surplus portion of the franchise tax is actually
a new "corporate income tax" and not merely a modification of an old tax. Because the
amendment affected transactions or considerations from earlier years, General Dynamics argues
that the amendment retroactively impairs its vested rights. Essentially, General Dynamics argues
that, because it reasonably relied on the franchise tax as it existed in 1984 when deciding to opt
for the "completed contract" method of assessing federal income taxes, the 1991 franchise tax
amendment impaired its vested right in the continuation of the pre-1992 franchise tax scheme.

 The Comptroller argues that the franchise tax is not unconstitutionally retroactive. 
The Comptroller contends that because General Dynamics' franchise taxes were not levied before
the effective date of the amendment, the amendment did not operate retroactively. The
Comptroller urges that the use of the previous year's earned surplus as a measure of the franchise
tax does not make the amendment retroactive.

 The secondary issue in this appeal concerns Texas' method of apportioning its
franchise tax base for multi-state corporations. Most states apportion their share of a
corporation's tax base by using a percentage generated by a three-factor formula equally weighing
the percentage of property, payroll, and sales in the taxing state. Texas, however, uses a single-factor apportionment formula based solely on sales. Therefore, the Texas formula apportions a
percentage of the tax base equal to the percentage of the corporation's sales in Texas. In General
Dynamics' situation, Texas' use of the single factor method yielded approximately $11 million
more in Texas franchise tax owed. In other words, General Dynamics would owe approximately
$11 million less in Texas franchise tax if Texas had used the three-factor apportionment formula.

 General Dynamics argues that this disparity is excessive and unfair and, therefore,
the Texas formula violates the Commerce and Due Process Clauses of the United States
Constitution and the Due Course of Law Provision of the Texas Constitution. The Comptroller
responds that states are given wide latitude to develop apportionment formulas for state excise
taxes and that the use of a single-factor formula should be upheld unless its use leads to a grossly
excessive disparity in comparison with the three-factor formula. The Comptroller urges that the
apportionment disparity in this case is not sufficiently high to make the Texas formula
unconstitutional.



DISCUSSION


 "[W]e begin with a presumption of validity. It is to be presumed that the
Legislature has not acted unreasonably or arbitrarily; and a mere difference of opinion, where
reasonable minds could differ, is not a sufficient legal basis for striking down legislation . . . ." 
Texas Workers' Compensation Comm'n v. Garcia, 893 S.W.2d 504, 520 (Tex. 1995); see also
Prudential Health Care Plan, Inc. v. Commissioner of Ins., 626 S.W.2d 822, 827 (Tex.
App.--Austin 1982, writ ref'd n.r.e.). If a legislative scheme or design can be justified under any
possible state of facts, we will assume the existence of those facts. Garcia, 893 S.W.2d at 520;
Massachusetts Indem. & Life Ins. Co. v. Texas State Bd. of Ins., 685 S.W.2d 104, 109 (Tex.
App.--Austin 1985, no writ). When a statute is challenged as retroactive, we presume that it is
meant to operate prospectively unless it explicitly states that it is retroactive. Code Construction
Act, Tex. Gov't Code Ann. § 311.022 (West 1988).



1. Retroactivity

 In its first two points of error, General Dynamics contends that the amendment to
the franchise tax was unconstitutionally retroactive. On August 13, 1991, the Legislature passed
the law that added earned surplus to the tax base of the franchise tax. Acts of 1991, 72nd Leg.,
1st C.S., ch. 5, § 8.03, 1991 Tex. Gen. Laws 134, 152 (House Bill 11, effective January 1,
1992). The effective date for House Bill 11 was January 1, 1992, and it applied to tax reports due
on or after that date. Id. Corporations were not required to use the earned surplus method of
calculating tax liability for reports due before the act's effective date. Id. However, corporations
were required to use their 1991 income to assess the amount of franchise tax owed for the
privilege of doing business in Texas for the calendar year 1992. See Tex. Tax Code Ann. §§
171.002, 171.110 (West 1992 & Supp. 1996). In General Dynamics' case, its 1991 income was
actually accumulated over a seven-year period; however, because it chose to report the entire
profit in 1991 for federal income tax purposes, that income was used to calculate earned surplus
for General Dynamics' 1992 franchise tax. Id.; Internal Revenue Code § 451 (26 U.S.C. § 451
(1994)).

 Article I, section 16 of the Texas Constitution provides: "No bill of attainder,
ex post facto law, retroactive law, or any law impairing the obligation of contracts shall be made." 
Tex. Const. art. I, § 16. Retroactive laws are unconstitutional only if they impair vested rights. 
State v. Project Principle, Inc., 724 S.W.2d 387, 390 (Tex. 1987); Deacon v. City of Euless, 405
S.W.2d 59, 62 (Tex. 1966); Durish v. Channelview Bank, 809 S.W.2d 273, 278 (Tex.
App.--Austin 1991, writ denied); 1 George D. Braden et al., The Constitution of the State of
Texas: An Annotated and Comparative Analysis 58-62 (1977).

 General Dynamics argues that the earned surplus portion of the franchise tax is
unconstitutionally retroactive because it imposed a new "corporate income tax" that operated on
income earned in the prior calendar year. Therefore, General Dynamics argues that the new
"corporate income tax" destroyed or impaired its vested rights because it "create[d] a new
obligation, impose[d] a new duty, or attach[ed] a new disability, in respect to transactions or
considerations already past . . . ." Cardenas v. State, 683 S.W.2d 128, 131 (Tex. App.--San
Antonio 1984, no writ).

 We reject General Dynamics' argument because the amendment to the franchise
tax operated prospectively, not retroactively. It is important to note the difference between a
direct tax on property and the franchise tax. A direct tax on property is paid simply because the
taxpayer owns the property at a given time. The franchise tax, however, is an excise tax levied
as payment for the privilege of doing business during the year in which the tax is levied. 
American Home Assurance v. Texas Dep't of Ins., 907 S.W.2d 90, 93 (Tex. App.--Austin 1995,
writ requested); Sterling Oil, 202 S.W.2d at 302. The franchise tax is therefore prospective
because the tax levied beginning January of a given calendar year pays for the privilege of doing
business through December of that calendar year. As long as a tax is levied only after its effective
date and is levied at least in part for the privilege of doing business during the current year, then
it is not a retroactive tax. See American Home Assurance, 907 S.W.2d at 93; Houston Oil Co.
v. Lawson, 175 S.W.2d 716, 722 (Tex. Civ. App.--Galveston 1943, writ ref'd).

 General Dynamics argues that the tax is nevertheless retroactive because it uses
facts from the prior calendar year, namely net worth and earned surplus, to measure the value of
the privilege for which the franchise tax is paid. We disagree. "A statute is not retroactive
merely because it draws upon antecedent facts for its operation." Lewis v. Fidelity & Deposit Co.,
292 U.S. 559, 571 (1933) (quoted in American Home Assurance, 907 S.W.2d at 93). A statute
is retroactive only if it operates before its effective date. See State v. Galveston, Harrisburg, &
San Antonio Ry., 97 S.W. 71, 78 (Tex. 1906), rev'd on other grounds, 210 U.S. 217 (1908); De
Cordova v. City of Galveston, 4 Tex. 470, 479 (1849). The franchise tax operates only when it
is levied for the privilege of doing business; it does not operate in the preceding year used to
measure the value of the privilege. See Galveston, Harrisburg, & San Antonio Ry., 97 S.W. at
75; Coffee v. Castleberry, 258 S.W. 889 (Tex. Civ. App.--Amarillo 1924), referred and affirmed,
272 S.W. 767, 768 (Tex. Comm'n App. 1925, judgm't adopted). Therefore, the fact that the
value of the privilege is measured by the financial circumstances of the taxpayer in a prior
calendar year does not make the taxing statute retroactive. See Galveston, Harrisburg, & San
Antonio Ry., 97 S.W. at 75, 79. The franchise tax amendment at issue in this appeal became
effective January 1, 1992. It is not disputed that the tax was levied only after that date. 
Accordingly, we hold that the franchise tax amendment does not violate the Texas Constitution
because it operates prospectively, not retroactively.

 However, even if the amendment were construed to operate retroactively, we would
still hold that it does not violate the constitution. A retroactive law only violates the constitution
if it also impairs vested rights. Project Principle, 724 S.W.2d at 390; Deacon, 405 S.W.2d at
62; Durish, 809 S.W.2d at 278. General Dynamics argues that its vested rights have been
impaired because the amendment to the franchise tax violated the expectations upon which it relied
in formulating its business plan for 1991 and its decision to use the "completed contract" method
of accounting to realize all income in 1991. We disagree. General Dynamics' vested rights have
not been impaired because no Texas taxpayer has a vested right in the continuation of a particular
measurement method for the franchise tax. See Smith v. Davis, 426 S.W.2d 827, 834 (Tex.
1968).

 General Dynamics relies upon Ohio authority to argue that its vested rights have
been impaired by the franchise tax amendment. See Lakengren v. Kosydar, 339 N.E.2d 814
(Ohio 1975). In Lakengren, the Ohio Supreme Court held that an amendment to Ohio's franchise
tax was unconstitutionally retroactive under similar circumstances. Id. at 815-17. We reject
General Dynamics' reliance on Ohio law because Texas courts have decided the issue differently. 
In Lakengren, the Ohio Supreme Court noted that an Ohio taxpayer had a vested right in the
continuation of a particular tax scheme as long as the taxpayer reasonably relied on the tax
scheme. See id. at 815, 817 ("The prohibition against retroactive laws . . . is a protection for the
individual who is assured that he may rely upon the law as it is written and not be subject later
to new obligations thereby." (emphasis added)). The Texas Supreme Court has specifically
rejected the rationale advanced by General Dynamics: "A property owner has no vested right to
have his property assessed by any particular method or system . . . ." Davis, 426 S.W.2d at 834.

 Because the franchise tax amendment at issue is not retroactive and does not impair
General Dynamics' vested rights, we hold that it is not unconstitutionally retroactive and overrule
General Dynamics' first and second points of error.



2. Apportionment

 In its third point of error, General Dynamics challenges the Texas formula used to
apportion the franchise tax base. A multi-state corporation such as General Dynamics has its tax
base apportioned among the various states in which it does business. States use different formulas
to approximate the amount of the tax base attributable to each taxing state. Texas uses a single-factor formula based on gross receipts; in other words, Texas apportions a percentage of the
corporation's total tax base equal to the corporation's Texas gross receipts divided by the
corporation's total gross receipts. See Tex. Tax Code Ann. §§ 171.002, 171.006, 171.110 (West
1992 & Supp. 1996). Almost every other state that charges corporations for the privilege of doing
business uses a three-factor method of apportionment based on payroll, property, and gross
receipts. (6)

 General Dynamics complains that its Texas franchise tax burden for the period at
issue was approximately $11 million higher under the Texas formula than it would have been if
Texas had used the three-factor formula. Because General Dynamics has relatively more gross
receipts in Texas but relatively less property and payroll in Texas than in other states, the three-factor formula would have reduced the percentage of its tax base apportioned to Texas. General
Dynamics blames the Texas formula for this disparity and argues that, as applied in this appeal,
the Texas formula is unfair and violates the Commerce (7) and Due Process Clauses (8) of the United
States Constitution and the Due Course of Law Provision (9) of the Texas Constitution.

 General Dynamics shoulders a heavy burden in challenging the constitutionality of
the Texas formula as applied in this appeal. The United States Supreme Court has repeatedly held
that states are entitled to great latitude in devising formulas to apportion their tax bases. Moorman
Mfg. Co. v. Maryland, 437 U.S. 267, 274 (1978). In Moorman, the Court sustained the
constitutional validity of an Iowa single-factor formula identical to the Texas formula at issue in
this appeal. Id. at 270, 281. The Court noted that a single-factor formula is presumptively valid. 
Id. at 273. Even though a majority of states use the three-factor apportionment formula, a healthy
respect for federalism dictates that the minority of states using single-factor formulas cannot be
blamed for any resulting disparities. Id. at 276-77.

 General Dynamics contends that the Texas formula creates an unfair disparity and
is therefore unconstitutional because the formula increased its franchise tax liability by almost $11
million. However, the validity of an apportionment scheme does not depend on the absolute
amount of tax at issue nor even on the fairness of the formula as applied. General Dynamics
persuasively argues that the Texas formula may be unfair in some instances. (10) However, even
assuming that the Texas formula may operate with some degree of unfairness, a decision to change
the formula properly lies within the province of the Texas Legislature. We do not sit to devise
wise tax policy for this State; our inquiry ends once we determine that the formula is
constitutional. See Isbell v. Gulf Union Oil Co., 290 S.W.2d 762, 765 (Tex. 1948); Aerospace
Optimist Club v. Texas, 886 S.W.2d 556, 559 (Tex. App.--Austin 1994, no writ). Whatever the
faults of the Texas formula, we cannot say that it is unconstitutional.

 To show that an apportionment method is unconstitutional, a taxpayer must prove
by "`clear and cogent evidence' that the income attributed to the State is `out of all appropriate
proportion to the business transacted . . . in that State,' or has led to a `grossly distorted result.'" 
Moorman, 437 U.S. at 274 (quoting Hans Rees' Sons v. North Carolina, 283 U.S. 123, 135
(1931) and Norfolk & Western Ry. v. Missouri State Tax Comm'n, 390 U.S. 317, 326 (1968)). 
The disparity is measured by the difference between the percentage of the tax base apportioned
under the challenged formula and a hypothetical percentage apportioned under the formula urged
by the taxpayer. As indicated by the Supreme Court precedents discussed below, even a
significant disparity does not suffice to find a challenged formula unconstitutional. The Court has
only twice held the application of a single-factor formula to be unconstitutional. See Hans Rees'
Sons, 283 U.S. at 132-36; Norfolk & Western Ry., 390 U.S. at 326-29. In Hans Rees' Sons, the
difference between the taxpayer and statutory formulas was 250 percent. (11) See Hans Rees' Sons,
283 U.S. at 132-36. In Norfolk & Western Ry., the difference between the two formulas was 162-205%. Norfolk & Western Ry., 390 U.S. at 326-29.

 In this appeal, the difference in the apportionment of General Dynamics' Texas tax
base under the two formulas is 28%. The 28% difference in this appeal is simply insufficient to
show a grossly distorted result that is out of all proportion with the percentage actually
apportioned. Not only is the disparity an order of magnitude smaller than in the two challenges
the Supreme Court has sustained, but the Court has also upheld percentage disparities ranging
between 14-93%. (12) See Container Corp., 463 U.S. at 174 n.11, 175 n.12, 184 (14%); Moorman,
437 U.S. at 271 (25-40%); Underwood Typewriter v. Chamberlain, 254 U.S. 113, 119-120 (1920)
(93%). As a matter of law, the disparity in this appeal is too small to sustain a constitutional
challenge to the Texas formula. See Container Corp., 463 U.S. at 184 ("[the 14% disparity is]
a far cry from the more than 250% difference which led us to strike down the state tax in Hans
Rees' Sons, Inc., and a figure certainly within the substantial margin of error inherent in any
method of attributing income among the components of a unitary business.") (citations omitted).

 General Dynamics, relying on Justice Powell's dissenting opinion in Moorman, also
argues that a single-factor method of apportionment discriminates against interstate commerce. 
See Moorman, 437 U.S. at 283 (Powell, J., dissenting). General Dynamics reasons that an out-of-state corporation is likely to have substantial out-of-state property and payroll that would serve
to dilute the overall apportionment factor based solely on sales if a multiple-factor method was
used. We reject this argument. First, we decline to follow a dissenting opinion over well-settled
Supreme Court precedent. Second, we agree with the majority opinion in Moorman that the
single-factor apportionment formula treats all corporations "with an even hand." See Moorman,
437 U.S. at 278 n.12. The Texas formula is geographically neutral because it uses the single
factor without regard to the state of incorporation. Though the Texas formula may operate more
favorably for corporations with relatively lower sales in Texas, the rule applies in the same
fashion to Texas and foreign corporations alike.

 The Texas single-factor formula for apportionment is not unconstitutional as applied
to General Dynamics. General Dynamics has shown that its tax burden would have been lower
if Texas had used a three-factor apportionment formula. However, the increase in General
Dynamics' tax base apportioned to Texas is insufficient as a matter of law to demonstrate that the
Texas formula as applied to it is unconstitutional. We therefore overrule General Dynamics' third
point of error.



CONCLUSION


 Having overruled each of appellant's points of error, we affirm the district court's
judgment.



 

 Mack Kidd, Justice

Before Justices Powers, Aboussie and Kidd; Justice Powers not participating

Affirmed

Filed: April 3, 1996

Publish

1.   Appellees are John Sharp, Comptroller of Public Accounts of the State of Texas;
Martha Whitehead, Successor in Office to Kay Bailey Hutchison, Treasurer of the State of
Texas; and Dan Morales, Attorney General of the State of Texas.
2.   Corporations' taxable capital consists of stated capital and surplus. Tex. Tax Code
Ann. § 171.101(a)(1) (West 1992). Stated capital is defined by reference to the Texas
Business Corporation Act. See Tex. Bus. Corp. Act, art. 1.02(18) (West Supp. 1996). The
Franchise Tax Act defines surplus as net assets minus stated capital. Tex. Tax Code Ann.
§ 171.109(a)(1) (West 1992). Net assets are total assets minus total debts. Tex. Tax Code Ann.
§ 171.109(a)(2) (West 1992). Earned surplus is reportable federal net income, less certain foreign
source income, plus officer and director compensation. Tex. Tax Code Ann. § 171.110(a)(1)
(West 1992 & Supp. 1996).
3.   General Dynamics delivered 108 aircraft in 1987, 178 in 1988, 158 in 1989, 200 in 1990,
and 76 in 1991 for a total of 720 F-16s.
4.   The reason for using past income to measure the privilege of doing business in a current
year is because past or accumulated wealth is the financial starting point for the current
year's business. See Southern Realty Corp. v. McCallum, 65 F.2d 934, 935-36 (5th Cir.), cert.
denied, 290 U.S. 692 (1933).
5.   General Dynamics earned approximately $21 million from the sale of 76 F-16s to the
U.S. military in 1991.
6.   See Ala. Reg. § 810-3-31.02; Alaska Stat. § 43.20.065 (1994); Ariz. Rev. Stat. Ann. § 43-1139 (1994); Ark. Code Ann. § 26-51-709 (Michie 1992); Cal. Rev. & Tax Code § 25128 (West
1992 & Supp. 1994); Colo. Rev. Stat. Ann. § 39-22-303 (1990 & Supp. 1994); Conn. Gen. Stat.
§ 12-218 (1993); Del. Code Ann. tit. 30, § 1903(b)(6) (1985); D.C. Code Ann. § 47-1810.2(d)
(1990); Fla. Stat. ch. 112 § 220.15 (1989 & Supp. 1995); Ga. Code Ann. § 48-7-31 (d)(2) (1982
& Supp. 1994); Haw. Rev. Stat. §§ 235-22, 235-29, 235-38 (1985); Idaho Code § 63-3027(i)
(1989); Ill. Ann. Stat. ch. 35, para. 5/305 (Smith-Hurd 1993); Ind. Code § 6-3-2-2 (1989 & Supp.
1994); Iowa Code § 422.33.2(b)(4) (1990); Kan. Stat. Ann. § 79-3279 (1993); Ky. Rev. Stat.
Ann. § 141.120(8) (1991 & Supp. 1994); La. Rev. Stat. Ann. §§ 47:287.92, 47:287.93,
47:287.94 (1990 & Supp. 1994); Me. Rev. Stat. Ann. tit. 36, § 5211.8 (West 1994); Md. Tax
Code Ann. §10-402(2)(c) (1988 & Supp. 1994); Mass. Gen. L. ch. 63, § 38(c) (1988); Mich.
Comp. Laws § 7.558(45) (1994); Minn. Stat. § 290.191.2 (1990); Miss. Code Ann. § 27-7-23(c)(2)(B) (1992); Mo. Rev. Stat. § 143.451 (1976 & Supp. 1994); Mont. Code Ann. § 15-31-305 (1993); N.H. Rev. Stat. Ann. § 77-A:3 (1994); N.J. Rev. Stat. § 54:10-A-6 (1986); N.M.
Stat. Ann. § 7-4-10 (Michie 1978 & Supp. 1994); N.Y. Tax Law § 210 (McKinney 1986 & Supp.
1995); N.C. Gen. Stat. § 105-130.4(i) (1992); N.D. Cent. Code § 57-38.1-09 (1993); Ohio Rev.
Code Ann. § 5733.05(B)(2) (Baldwin 1993); Okla. Stat. tit. 68, § 2358(A)(5) (1992 & Supp.
1993); Or. Rev. Stat. § 314.650 (1993); 72 Pa. Cons. Stat. § 7401 (1990); R.I. Gen. Laws §§ 44-11-14, 44-11-15 (1988); S.C. Code Ann. §12-7-1150 (Law. Co-op. 1998); S.D. Codified Laws
Ann. § 10-43-22.1 (1989); Tenn. Code Ann. §§ 67-4-809, 67-4-810, 67-4-811 (1994); Utah Code
Ann. § 59-7-311 (1992); Vt. Code Ann. tit. 32, § 5833(a) (1993); Va. Code Ann. §§ 58.1-406,
58.1-408 (Michie 1991); W. Va. Code § 11-24-7(e) (1991); Wis. Stat. § 71.25(6) (1989 & Supp.
1994).
7.   The Commerce Clause states that Congress shall have the power "[t]o regulate
Commerce with foreign Nations, and among the several States, and with the Indian Tribes." 
U.S. Const. art. I, § 8, cl. 3.
8.   The Due Process Clause provides that no person shall be deprived "of life, liberty or
property, without due process of law." U.S. Const. amends. V and XIV, § 1.
9.   The Due Course of Law Provision provides: "No citizen of this State shall be deprived
of life, liberty, or property, or privileges and immunities, or in any manner disfranchised,
except by the due course of the law of the land." Tex. Const. art. I, § 19.
10.   General Dynamics argues that the three-factor formula more appropriately values the
privilege to do business because companies with relatively higher payroll and property in
Texas use substantial state services and therefore should have a higher percentage of their
tax base apportioned to Texas. Conversely, corporations such as General Dynamics that
have relatively higher sales in Texas would have a lower percentage of their tax base
apportioned to Texas.
11.   Appellant has calculated the disparity in Hans Rees' Sons as 469 percent. The Supreme
Court, however, calculated it at 250 percent in a subsequent opinion. See Container Corp. of Am.
v. Franchise Tax Bd., 463 U.S. 159, 184 (1983). We have used the Supreme Court's number,
but we note that it makes no difference in this appeal. 
12.   The Court has upheld formulas producing greater percentage disparities in situations
where a lower dollar amount was involved, making the percentage disparity far less
meaningful. See Butler Bros. v. McColgan, 315 U.S. 501, 505-06 (1942) (15,300%); Ford
Motor Co. v. Beauchamp, 308 U.S. 331, 333-34 (1939) (770%).