TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN





ON MOTION FOR REHEARING








NO. 03-04-00660-CV






Home Interiors & Gifts, Inc., Appellant


v.


Carole Keeton Strayhorn, Comptroller of Public Accounts of the State of Texas,

and Greg Abbott, Attorney General of the State of Texas, Appellees







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT

NO. GN303185, HONORABLE DARLENE BYRNE, JUDGE PRESIDING





O P I N I O N




 On August 9, 2005, appellant, Home Interiors & Gifts, Inc., filed an unopposed
motion for rehearing seeking a modification of our opinion and judgment issued on July 28, 2005. 
Additionally, on August 15, 2005, the appellees, the Comptroller and the Attorney General, filed a
motion for rehearing. We grant the appellant's unopposed motion and overrule the appellees'
motion. Accordingly, our opinion and judgment issued on July 28, 2005, are withdrawn, and the
following opinion is substituted.

 In this case, we determine whether the earned surplus throwback provision of the
Texas franchise tax as applied to appellant, Home Interiors & Gifts, Inc. (Home Interiors),
unconstitutionally burdens interstate commerce. Home Interiors is seeking a refund of franchise
taxes timely paid to appellee, Carole Keeton Strayhorn (the Comptroller). Both parties filed motions
for summary judgment. The district court denied Home Interiors' motion and granted the
Comptroller's motion. On appeal, Home Interiors argues that the application of the earned surplus
throwback provision causes the franchise tax to (1) be unfairly apportioned, (2) discriminate against
interstate commerce, and (3) be unfairly related to services provided by Texas. Because we hold that
the franchise tax as applied to Home Interiors lacks internal consistency and, consequently, is
unfairly apportioned, we reverse the district court's grant of summary judgment in favor of the
Comptroller and render judgment that the tax is unconstitutional as applied to Home Interiors.


BACKGROUND


Home Interiors

 Home Interiors is a Texas corporation that employs approximately 350 employees in
Texas. Virtually all its operations occur in Texas--it has no manufacturing, warehousing, or
administrative facilities outside of this state. It is in the business of purchasing home decor products,
accessories, and gifts and wholesaling them to independent contractors, known as "Displayers." 
Additionally, Home Interiors sells a variety of marketing materials to the Displayers to aid in the
retail sale of the products. All of Home Interiors' profits are generated from the initial sale of the
products to the Displayers. During the period of time relevant to this appeal, Home Interiors sold
products to Displayers located in all fifty states, Washington D.C., and Puerto Rico.

 The Displayers generate sales by hosting promotional parties where they provide
samples and demonstrate various products. They also distribute catalogs and recruit new salesmen. 
Essentially, the Displayers function as a retail outlet for Home Interiors' wares. However, the
Displayers are not employed by Home Interiors. Home Interiors does not compensate the Displayers
and does not provide them benefits of any kind. It does, however, pay the Displayers a commission
on sales generated by a newly recruited salesperson. Additionally, Home Interiors has no contact
with any of the Displayers' retail customers and does not install or repair products outside of Texas.

 Between 1994 and 1999, Home Interiors timely paid its Texas franchise taxes. It now
seeks a refund of those taxes, contending that the statutory method for apportioning the earned
surplus component of the franchise tax is unconstitutional. After refund hearings were held, the
Comptroller issued a decision in July 2003 stating that she did not have the authority to rule on the
constitutionality of the statutory provisions. Consequently, Home Interiors brought suit in district
court, which upheld the constitutionality of the earned surplus throwback provision.


Texas Franchise Tax

 The franchise tax is imposed on corporations in Texas for the privilege of doing
business here. See Tex. Tax Code Ann. § 171.001(a)(1) (West Supp. 2004-05); Anderson-Clayton
Bros. Funeral Home, Inc. v. Strayhorn, 149 S.W.3d 166, 169 (Tex. App.--Austin 2004, pet. filed);
Rylander v. Fisher Controls Int'l, Inc., 45 S.W.3d 291, 293 (Tex. App.--Austin 2001, no pet.). 
Before January 1, 1992, the franchise tax was assessed solely on a corporation's taxable capital. 
Anderson-Clayton Bros., 149 S.W.3d at 169. The result was that capital-intensive industries bore
the brunt of the tax. Id. In an effort to broaden the franchise tax base, the legislature added an
alternative assessment on a corporation's "net taxable earned surplus." Id. Presently, the tax is
calculated by adding the tax on net taxable capital to the difference between the tax on net taxable
earned surplus and the tax on net taxable capital. See Tex. Tax Code Ann. § 171.002(b) (West
2002); INOVA Diagnostics, Inc. v. Strayhorn, 166 S.W.3d 394, 398 (Tex. App.--Austin, pet. filed). 
Despite this awkward formula, the practical effect is to assess the greater of a 4.5 percent tax on net
taxable earned surplus or a .25 percent tax on net taxable capital. See INOVA, 166 S.W.3d at 398.

 A corporation's net taxable capital consists of its stated capital and its surplus. Fisher
Controls Int'l, 45 S.W.3d at 293. Its net taxable earned surplus is comprised of its reportable taxable
income (for federal income-tax purposes) plus certain other sums and less other amounts. Id. at 294. 
A corporation's net taxable capital or net taxable earned surplus is apportioned to the state by
dividing the corporation's gross receipts generated in Texas by the corporation's total world-wide
gross receipts. (1) See Tex. Tax Code Ann. § 171.106 (West Supp. 2004-05); General Dynamics Corp.
v. Sharp, 919 S.W.2d 861, 863 (Tex. App.--Austin 1996, writ denied). In addition, a corporation's
gross receipts from each sale of tangible personal property shipped from Texas to a purchaser in
another state are "thrown back" to Texas and added to the gross receipts from business done in
Texas. Tex. Tax Code Ann. §§ 171.103(1) (West 2002), .1032(a)(1) (West Supp. 2004-05). Gross
receipts used to apportion net taxable capital are only thrown back if the corporation is not subject
to taxation in the purchaser's state. Id. § 171.103(1) (taxable capital throwback provision). 
Importantly, gross receipts used to apportion net taxable earned surplus are thrown back if the
corporation "is not subject to any tax on, or measured by, net income, without regard to whether the
tax is imposed." Id. § 171.1032(a)(1) (earned surplus throwback provision).

 The purpose of the earned surplus throwback provision is to capture and tax income
generated from sales in other states that would otherwise go untaxed as a result of Public Law 86-272. See id.; cf INOVA, 166 S.W.3d at 397 (explaining purpose of Public Law 86-272). Congress
enacted Public Law 86-272 in 1959 in response to a United States Supreme Court decision that
indicated that the federal constitution does not prohibit individual states from imposing an income
tax on out-of-state corporations, even when their only business activity in the state is solicitation of
purchases. 15 U.S.C. § 381(a) (West 1997); see Wisconsin Dep't of Revenue v. William Wrigley, Jr.
Co., 505 U.S. 214, 220-21 (1992) (discussing opinion in Northwestern States Portland Cement Co.
v. Minnesota, 358 U.S. 450, 452 (1959)). Less than a year after the Northwestern States Portland
Cement opinion, Public Law 86-272 was passed to create minimum standards for business activity
required within a state before that state may impose state income tax on an out-of-state corporation. 
See William Wrigley, Jr. Co., 505 U.S. at 223. Specifically, the statute prohibits a state from
imposing a net income tax if the foreign taxpayer's only business activity in the state is the
solicitation of orders. See 15 U.S.C. § 381(a). A net income tax is "any tax imposed on, or
measured by, net income." Id. § 383.

 All parties in this case concede that Public Law 86-272 protects Home Interiors from
being taxed on income generated from sales of its products to Displayers located in most states. (2) 
Consequently, the gross receipts from sales to Displayers in those states were thrown back to Texas
and added to Home Interiors' receipts from business done in Texas. Home Interiors claims that the
inclusion of the thrown back receipts is significant because, during the time period at issue here,
approximately ninety percent of its revenues were generated from sales outside of Texas. 
Accordingly, Home Interiors contends that the application of the earned surplus throwback provision
results in an unfairly apportioned franchise tax assessment.


STANDARD OF REVIEW


 We review the trial court's summary judgment de novo. Provident Life & Accident
Ins. Co. v. Knott, 128 S.W.3d 211, 215 (Tex. 2003); Texas Dep't of Ins. v. American Home
Assurance Co., 998 S.W.2d 344, 347 (Tex. App.--Austin 1999, no pet.). When parties file
cross-motions for summary judgment, each party in support of its motion necessarily takes the
position that there is no genuine issue of fact in the case and that it is entitled to judgment as a matter
of law. City of Pflugerville v. Capital Metro. Transp. Auth., 123 S.W.3d 106, 110 (Tex.
App.--Austin 2003, pet. denied). Thus, when both parties file a motion for summary judgment, we
determine all questions presented and render such judgment as the trial court should have rendered. 
See Commissioners Court v. Agan, 940 S.W.2d 77, 81 (Tex. 1997).

 In order to determine the judgment that the trial court should have rendered, we must
construe the Texas franchise tax statute. In construing a statute, "our objective is to determine and
give effect to the Legislature's intent." National Liab. & Fire Ins. Co. v. Allen, 15 S.W.3d 525, 527
(Tex. 2000); see Albertson's, Inc. v. Sinclair, 984 S.W.2d 958, 960 (Tex. 1999). Statutory
construction is a question of law for the court to decide. See Texas Dep't of Transp. v. Needham,
82 S.W.3d 314, 318 (Tex. 2002).


DISCUSSION


 Home Interiors argues that the application of the earned surplus throwback provision
causes the franchise tax to unconstitutionally burden interstate commerce because it results in an
assessment that (1) is unfairly apportioned, (2) discriminates against interstate commerce, and (3)
unfairly relates to services provided by Texas. Before directly considering Home Interiors' claim,
a brief review of Commerce Clause jurisprudence is beneficial.


Commerce Clause

 The Commerce Clause of the Constitution expressly grants Congress the power "[t]o
regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." 
U.S. Const., art. I, § 8, cl. 3. In addition to this express grant of authority, the Supreme Court has
held that the Commerce Clause also prohibits certain state regulation of interstate commercial
activity even when Congress has failed to legislate on the subject. Oklahoma Tax Comm'n v.
Jefferson Lines, Inc., 514 U.S. 175, 179-80 (1995); Quill Corp. v. North Dakota, 504 U.S. 298, 309
(1992). This implicit principle is known as the "Dormant" or "Negative" Commerce Clause. While
in theory the concept of the Dormant Commerce Clause is relatively simple to understand, its
application to the practical realities of interstate commerce has proved quite difficult.

 Initially, the Supreme Court held that interstate commerce was wholly immune from
state taxation. Jefferson Lines, 514 U.S. at 180. Although there were minor deviations, the Court
maintained this formalistic and mechanical approach to state taxation of interstate commerce until
the late 1930s. In 1938, the Court moved away from its traditional "free trade" approach to the
Commerce Clause. In Western Livestock v. Bureau of Revenue, 303 U.S. 250, 252 (1938), the Court
was asked to determine whether a New Mexico tax on the privilege of engaging in specified business
activities violated the Commerce Clause. The taxpayer was an instate magazine publisher and the
tax involved was measured by gross receipts from the sale of advertising in the magazine. Western
Livestock, 303 U.S. at 252. The magazine publisher argued that the revenue generated from the sale
of ad space to out-of-state advertisers was immune from taxation because the contracts were a form
of interstate commerce. Id. at 253. The Court sustained the tax and stated, "It was not the purpose
of the Commerce Clause to relieve those engaged in interstate commerce from their just share of
state tax burden even though it increases the cost of doing business." Id. at 254. The Court
explained that the tax did not present the risk of double taxation:


So far as the value contributed to appellants' New Mexico business by circulation of
the magazine interstate is taxed, it cannot again be taxed elsewhere any more than the
value of railroad property taxed locally. The tax is not one which in form or
substance can be repeated by other states in such manner as to lay an added burden
on the interstate distribution of the magazine.



Id. at 260. Shortly after Western Livestock, the Court further developed this rationale by invalidating
an unapportioned gross receipts tax on the ground that interstate commerce would be subjected to
the risk of a double tax burden not similarly imposed on intrastate commerce:


The vice of the statute as applied to receipts from interstate sales is that the tax
includes in its measure, without apportionment, receipts derived from activities in
interstate commerce; and that the exaction is of such a character that if lawful it may
in substance be laid to the fullest extent by States in which the goods are sold as well
as those in which they are manufactured.



J.D. Adams Mfg. Co. v. Storen, 304 U.S. 307, 311 (1938).


 The multiple taxation doctrine set forth in Western Livestock was not fully embraced
by the Court and was temporarily repudiated in 1946. See Freeman v. Hewit, 329 U.S. 249 (1946);
see also J. Hellerstein & W. Hellerstein, State Taxation ¶ 4.09 (3d ed. 2004) (hereinafter Hellerstein
& Hellerstein). In Spector Motor Serv., Inc. v. O'Connor, 340 U.S. 602, 607-10 (1951), the Court
held that a state is precluded from taxing the privilege of doing an exclusively interstate business,
even by means of a nondiscriminatory, fairly apportioned net income tax. See Hellerstein
& Hellerstein, ¶ 4.09.

 In Northwestern States Portland Cement Co. v. Minnesota, the Court attempted to
clear up "the tangled underbrush of past cases" by outlining the aspects of its Commerce Clause
jurisprudence that remained in full force. See 358 U.S. 450, 457-58 (1959). After distinguishing
Spector on the ground that it only involved a tax on the privilege of doing business, although
measured by net income, the Court held that there is no constitutional barrier to the imposition of
a nondiscriminatory, fairly apportioned direct net income tax on a foreign corporation carrying on
an exclusively interstate business within the taxing state. Id. at 458-60; see also Hellerstein &
Hellerstein, ¶ 4.10. After Northwestern States many states replaced franchise taxes levied solely on
the privilege of doing business in the state with direct net income taxes. See Hellerstein &
Hellerstein, ¶ 4.10.

 In 1977, the Court overruled Spector. See Complete Auto Transit, Inc. v. Brady, 430
U.S. 274, 288 (1977). The Court stated that "the Spector rule does not address the problems with
which the Commerce Clause is concerned. Accordingly, we now reject the rule of Spector Motor
Service, Inc. v. O'Connor, that a state tax on the 'privilege of doing business' is per se
unconstitutional when it is applied to interstate commerce." Complete Auto, 430 U.S. at 288-89. 
In reaching this conclusion, the Court noted that many of its post-Western Livestock opinions
considered the practical effect of a state tax rather than the formal language of the tax statute. Id.
at 279. Furthermore, the Court articulated what has come to be known as the Complete Auto
doctrine. Id. Essentially, the Court declared that a tax will survive Commerce Clause scrutiny
"when the tax is applied to an activity with a substantial nexus with the taxing State, is fairly
apportioned, does not discriminate against interstate commerce, and is fairly related to the services
provided by the State." Id. The four-pronged Complete Auto test continues to guide Commerce
Clause analysis today. See, e.g., American Trucking Ass'ns, Inc. v. Michigan Pub. Serv. Comm'n,
2005 U.S. LEXIS 4843, at *17 (June 20, 2005).

 Home Interiors now avers that, as applied to it, the application of the earned surplus
throwback provision causes the franchise tax to fail the Complete Auto test.


Substantial Nexus

 The first prong of the Complete Auto test asks whether Home Interiors' activities have
a substantial nexus with the state justifying the application of the franchise tax. Both parties agree
that Home Interiors' activities within the state are sufficient to constitute a substantial nexus.


Fair Apportionment

 The more difficult question is whether the application of the earned surplus
throwback provision to Home Interiors results in an unfair apportionment of franchise-tax liability
under the second prong of the Complete Auto test. The fair apportionment requirement attempts to
ensure that no State taxes more than its fair share of an interstate transaction. Jefferson Lines, 514
U.S. at 184; Goldberg v. Sweet, 488 U.S. 252, 260-61 (1989). "This principle of fair share is the
lineal descendant of Western Live Stock's prohibition of multiple taxation, which is threatened
whenever one State's act of overreaching combines with the possibility that another State will claim
its fair share of the value taxed." Jefferson Lines, 514 U.S. at 184. In order to determine whether
a tax is fairly apportioned, we first ask whether it is "internally consistent," and if so, whether it is
also "externally consistent." Id. at 185; Goldberg, 488 U.S. at 261.

 The internal consistency test requires us to imagine a hypothetical scenario assuming
that every state imposes a tax identical to the one at issue. Jefferson Lines, 514 U.S. at 185. In this
hypothetical, if interstate commerce bears a burden that is not also borne by intrastate commerce,
then the tax is not internally consistent. Id. "The test asks nothing about the degree of economic
reality reflected by the tax." Id. The test is merely a tool used to determine whether, as a matter of
law, a State is attempting to tax more than its fair share of interstate transactions. Id.

 Although the Supreme Court and various state courts have applied the internal
consistency test on a number of occasions, the two most significant and analogous examples are
Armco, Inc. v. Hardesty, 467 U.S. 638 (1984), and Tyler Pipe Industries, Inc. v. Washington Dep't
of Revenue, 483 U.S. 232 (1987). In Armco, the Court determined that West Virginia's business and
occupation tax (B&O tax) was internally inconsistent. Armco, 467 U.S. at 642-46. The B&O tax
had two components, a tax on wholesaling and a tax on manufacturing. Id. at 640-41. In general,
a taxpayer engaged in both wholesaling and manufacturing would be liable for taxes on both
activities. Id. However, there was a "multiple activities" exemption that relieved instate
manufacturers who also wholesaled their products in the state from liability for the wholesale tax. 
Id.; see Hellerstein & Hellerstein, ¶ 4.15. The result was that an instate manufacturer/wholesaler
only paid the manufacturing tax, but an out-of-state manufacturer who made wholesale sales in West
Virginia paid the wholesale tax, even if it paid a manufacturing tax in another state.

 An Ohio corporation challenged West Virgina's B&O tax scheme, claiming that it
was facially discriminatory and that it unconstitutionally discriminated against interstate commerce. 
Armco, 467 U.S. at 639-40. The Court agreed, concluding that the multiple activities exemption
caused the B&O tax to be internally inconsistent. Id. at 642-46. The Court explained that, if every
state adopted an identical B&O tax scheme, corporations that manufactured products in one state and
made wholesale sales in another state would be subject to manufacturing taxes in the state of
production and wholesale taxes in the state of sale. Id. However, a corporation that both
manufactured and made wholesale sales in the same state would never be subject to the wholesale
tax. Id. Significantly, in response to the argument that an instate manufacturer/wholesaler paid more
taxes than an out-of-state manufacturer as a result of the higher tax rate on manufacturing, the Court
held that a showing of actual discriminatory impact was unnecessary. Id. at 644-45.

 In Tyler Pipe, the Court addressed Washington state's B&O tax scheme, which was
nearly identical to the one struck down in Armco. Tyler Pipe, 483 U.S. at 234. The only difference
was that the Washington tax exempted instate manufacturer/wholesalers from the manufacturing tax
as opposed to the wholesale tax. Id. at 236-37. As a result, Washington's tax was not facially
discriminatory because both instate manufacturer/wholesalers, who benefitted from the exemption,
and out-of-state manufacturers, who made wholesale sales in Washington, were liable for the
wholesale tax. Id. at 239. Nevertheless, the Court concluded that the reasons for invalidating the
West Virginia tax equally applied to the Washington tax. Id. at 234. Like Armco, if every state
hypothetically imposed Washington's B&O tax scheme, then corporations that manufactured in one
state and sold wholesale in another would ultimately be liable for both the manufacturing and the
wholesale tax, while the instate manufacturer/wholesaler would never be liable for the manufacturing
tax. Again, the Court held that the Washington tax scheme was not internally consistent. Id. at 248.

 There are a number of lessons we can learn from Armco and Tyler Pipe regarding
internal consistency. First, a tax may be internally inconsistent even if a corporation doing intrastate
business pays more than a corporation doing interstate business. See id. at 240-41; see also Armco,
467 U.S. at 642-46. This was the case in Armco where the intrastate corporation actually paid more
tax, but the B&O tax scheme was still held to be internally inconsistent because the interstate
corporation was subject to a separate tax under the scheme that the intrastate corporation was not. 
Second, the internal consistency test does not require a showing of either actual discrimination or
actual multiple taxation; the test is purely hypothetical. See Tyler Pipe, 483 U.S. at 242-47. Finally,
a tax that is internally inconsistent, and therefore unfairly apportioned, discriminates against
interstate commerce. Id. at 247.

 Home Interiors argues that the interplay between Public Law 86-272 and the Texas
earned surplus throwback provision causes the franchise tax to be internally inconsistent as applied
to it. To determine if Home Interiors' argument is valid, our first step is to imagine a situation in
which every state imposes an integrated franchise tax, identical to the Texas tax, in which a
corporation's liability is the greater of a 4.5 percent tax on net taxable earned surplus or a .25 percent
tax on net taxable capital. Our second step is to imagine two corporations like Home Interiors. The
first corporation (intrastate corporation) resides in Texas and sells its products completely instate. 
The second corporation (interstate corporation) also resides in Texas but sells its products to instate
and out-of-state buyers and is protected by Public Law 86-272 from being taxed on its net income
from out-of-state sales. Our final step is to determine whether the interstate corporation bears a tax
burden that is not also borne by the intrastate corporation.

 Under this hypothetical tax scheme, the intrastate corporation will only pay franchise
tax to Texas. Its franchise tax liability will be the greater of a 4.5 percent tax on net taxable earned
surplus or a .25 percent tax on net taxable capital. It will never pay a tax on both its taxable capital
and its net taxable earned surplus. See Tex. Tax Code Ann. § 171.002(b). Essentially, the intrastate
corporation's franchise tax liability will be assessed on 100 percent of either its taxable capital or
its net taxable earned surplus.

 The interstate corporation is potentially liable for franchise tax in each state in which
it has a substantial nexus, basically each state in which it sold its products. As discussed earlier, the
Texas franchise tax is apportioned based on the gross receipts from sales and other specifically
enumerated business activities attributable to an individual state. However, because the interstate
corporation is protected from being taxed on its net income generated from out-of-state sales by
Public Law 86-272, the earned surplus throwback provision mandates that the gross receipts from
these sales be thrown back to Texas for use in apportioning Texas' share of the interstate
corporation's cumulative franchise tax burden. Thus, the interstate corporation's franchise tax
liability to Texas will be the greater of a 4.5 percent tax on net taxable earned surplus or a .25 percent
tax on net taxable capital. Both parties agree that in Texas the greater of the two franchise tax
components will be the tax on net taxable earned surplus because of the higher tax rate and the
inclusion of the gross receipts resulting from the application of the earned surplus throwback
provision.

 Even though Public Law 86-272 protects the interstate corporation from a tax based
on net income in states other than Texas, the interstate corporation would still be liable for franchise
taxes on its net taxable capital in those states that hypothetically apply the integrated Texas franchise
tax. See INOVA, 166 S.W.3d at 401 (where Public Law 86-272 prohibits taxation of earned surplus,
comptroller may impose tax based on capital). Under this hypothetical scenario, the interstate
corporation would be subject to a franchise tax based on its net taxable earned surplus in Texas and
franchise taxes based on its net taxable capital in all other states. Therefore, because an interstate
corporation could be subject to a tax that an intrastate corporation would never bear, the Texas
franchise tax as applied to Home Interiors is not internally consistent. See Tyler Pipe, 483 U.S. at
248; Armco, 467 U.S. at 644.

 The Comptroller contends that the Texas franchise tax is internally consistent
because, even if every state imposed an identical tax, no more than 100 percent of an interstate
corporation's taxable capital base or net taxable earned surplus base would be subject to tax. The
Comptroller's theory is predicated on the notion that the internal consistency test should be applied
to one tax base at a time, net taxable capital or net taxable earned surplus. In support of this theory,
the Comptroller cites to Container Corp. v. Franchise Tax Board, 463 U.S. 159, 163 (1983); Armco,
467 U.S. at 640; Tyler Pipe, 483 U.S. at 253; American Trucking Ass'ns, Inc. v. Scheiner, 483 U.S.
266 (1987); Goldberg, 488 U.S. at 256; and Jefferson Lines, 514 U.S. at 177, to establish that the
Supreme Court has invariably applied the test to one taxable base. The Comptroller's reading of
Container Corp., American Trucking, Goldberg, and Jefferson Lines is correct because in those
instances the Court was applying the internal consistency test to a singular tax. However, in both
Armco and Tyler Pipe, the Court applied the test to tax schemes that consisted of two distinct tax
bases. See Tyler Pipe, 483 U.S. at 234-36; Armco, 467 U.S. at 640-42. In both cases, the Court
concluded that the tax scheme was not fairly apportioned because, applying the internal consistency
test, an interstate corporation was subject to a tax that would never be assessed on an intrastate
corporation. See Tyler Pipe, 483 U.S. at 248; see also Armco, 467 U.S. at 644-46. Similarly, if the
hypothetical internal consistency test is applied to the integrated Texas franchise tax, an interstate
corporation, that both resides in Texas and is protected by Public Law 86-272 from the imposition
of a tax based on net income in other states, would be subject to both a tax on capital in the other
state and on earned surplus in Texas, while a similarly situated intrastate corporation would only be
subject to the greater of the two taxes. Thus, we find no difference between the application of the
internal consistency test in this case and the Supreme Court's application of the test in Armco and
Tyler Pipe.

 The Comptroller insists that the Texas franchise tax is not facially discriminatory and
would pass the internal consistency test in the absence of Public Law 86-272. In her reply brief, the
Comptroller explains, "The risk of taxing multi-state corporations on 100% of earned surplus and
100% of capital does not arise from 'impermissible discrimination against interstate commerce,' but
from the relationship between Public Law 86-272 and the franchise tax." She also states, "Without
Public Law 86-272, Texas franchise taxpayers would all be taxed on the greater of earned surplus
or capital." She then cites Shell Oil Co. v. Iowa Department of Revenue, 488 U.S. 19, 30 (1988), for
the proposition that "[a] federal law enacted under the Commerce Clause does not invalidate a
neutral state statute under the negative Commerce Clause." She contends that while in operation
there may be a risk of discrimination against an interstate company, it is only Public Law 86-272,
not the Texas franchise tax, that produces this possibility. Therefore, in light of Shell Oil, the
Comptroller insists that the neutral Texas franchise tax survives Commerce Clause scrutiny.

 While we agree that the Texas franchise tax is facially neutral, we disagree with the
Comptroller's reading of Shell Oil. Nowhere in the opinion do we find support for the general
proposition proffered by the Comptroller. In fact, the Court's Commerce Clause analysis appears
to dictate a case-by-case analysis when determining whether a federal law preempts a state law, even
when the state law is facially neutral. See Shell Oil, 488 U.S. 24-28. More importantly, Public Law
86-272 provoked the earned surplus throwback provision; the throwback provision was designed to
take advantage of the effect of Public Law 86-272--leaving a significant portion of net income from
interstate commerce untaxed by any state--by having those receipts thrown back to Texas for
inclusion in our franchise tax computations when the business has a significant nexus with this state. 
See INOVA, 166 S.W.3d at 398 n.3 (recognizing that Public Law 86-272 has been incorporated into
Comptroller's rules). In the absence of Public Law 86-272, other states would be allowed to impose
net income taxes on corporations that merely solicit sales in their state. Without Public Law 86-272
there would be no earned surplus throwback provision in Texas because there would be nothing to
throw back. Thus, we conclude that it would be improper to analyze the franchise tax without
considering the ramifications of Public Law 86-272.

 In conclusion, we hold that the interplay between Public Law 86-272 and the earned
surplus throwback provision causes the franchise tax, as applied to Home Interiors, to be internally
inconsistent. Therefore, it fails Complete Auto's fair apportionment requirement. Because we hold
that the tax is unfairly apportioned as to Home Interiors, we need not address the final two prongs
of the Complete Auto test.

 Although we hold that the franchise tax as applied to Home Interiors lacks internal
consistency, we acknowledge that the Supreme Court has envisioned a remedy. The Court has
recognized that a credit system can be used to cure fair apportionment problems. In Goldberg v.
Sweet, the Supreme Court held that the Illinois Tax Act did not pose a risk of multiple taxation
because of a credit provision. See 488 U.S. 252, 263-64 (1989); see also Tyler Pipe, 483 U.S. at 245
n.13 (noting, "[m]any States provide tax credits that alleviate or eliminate the potential multiple
taxation that results when two or more sovereigns have jurisdiction to tax parts of the same chain
of commercial events."). Similarly, the Texas legislature might explore granting an interstate
company a franchise tax credit to offset any taxes assessed on the interstate company's capital by a
state that threw back receipts to Texas.

 We agree with Walter Hellerstein that "[t]he Court has embraced a doctrine of
'internal consistency' that may introduce confusion and uncertainty in an area of the law that has had
more than its fair share of both." Walter Hellerstein, Is Internal Consistency Foolish?: Reflections
on an Emerging Commerce Clause Restraint on State Taxation, 87 Mich. L. Rev. 138, 188 (1988).
An unfairly apportioned state tax discriminates against interstate commerce, but is a hypothetical test
that ignores the practical interplay of states' actual taxation schemes on interstate commerce a proper
way to measure internal consistency? We join Justice Scalia in expressing our distrust of
hypothetical assumptions to measure the proper reach of the Dormant Commerce Clause: "It seems
to me that we should adhere to our long tradition of judging state taxes on their own terms, and that
there is even less justification for striking them down on the basis of assumptions as to what other
States might do than there is for striking them down on the basis of what other States in fact do." 
Tyler Pipe, 483 U.S. at 259 (Scalia, J., concurring) (emphasis in original). Home Interiors' interstate
commerce is not actually burdened by the earned surplus throwback provision; the risk of multiple
taxation is only hypothetical. Nevertheless, the Supreme Court has held that the mere risk of
multiple taxation is sufficient to invalidate a state tax as unduly burdensome on interstate commerce. 
See Jefferson Lines, 514 U.S. at 185; Tyler Pipe, 483 U.S. at 247. We cannot ignore that the Texas
earned surplus throwback provision creates such a hypothetical risk as applied to Home Interiors. 


CONCLUSION


 We hold that the interplay between the earned surplus throwback provision and Public
Law 86-272 causes the Texas franchise tax to fail the internal consistency test as applied to Home
Interiors. Accordingly, Home Interiors' franchise tax assessment is unfairly apportioned. We
reverse the district court's grant of summary judgment in favor of the Comptroller and render
judgment that the Texas franchise tax, as applied to Home Interiors, unconstitutionally burdens
interstate commerce. We further order the Comptroller to refund to Home Interiors the franchise
taxes in controversy in the amount of $15,480,088 plus interest.



 __________________________________________

 Bea Ann Smith, Justice

Before Chief Justice Law, Justices B. A. Smith and Pemberton: Opinion by Justice B. A. Smith;

 Concurring Opinion by Justice Pemberton

Reversed and Rendered

Filed: September 22, 2005

1. In apportioning net taxable capital and net taxable earned surplus, the gross receipts of a
corporation from its business done in Texas include the receipts from a number of specifically
enumerated categories of business activities and services performed here. See Tex. Tax Code
§§ 171.103 (West 2002), .1032 (West Supp. 2004-05).
2. We note that Home Interiors' activities exceeded those protected by Public Law 86-272 in
fourteen states during certain time periods relevant to this appeal. The Comptroller agreed that gross
receipts from sales to those states during the applicable periods were not subject to the throwback
provision, and those receipts were excluded from the apportionment calculation.